**Raymond J. KUHAR, Plaintiff,**

v.

**GREENSBURG–SALEM SCHOOL DISTRICT, Defendant.**

Civ. A. No. 78–514.

United States District Court,
W. D. Pennsylvania.

Feb. 27, 1979.

Ralph D. Conrad, Ciarimboli & Slyman, Greensburg, Pa., for plaintiff.

John N. Scales, Greensburg, Pa., for defendant.

## MEMORANDUM OPINION, INCLUDING INTRODUCTION, FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

SIMMONS, District Judge.

### A. INTRODUCTION

Plaintiff in this case filed his Complaint with this Court on May 10, 1978, requesting

a preliminary and a permanent injunction against the defendants, Greensburg-Salem School District and Robert L. Dovey, its superintendent, alleging a violation of his civil rights as the same are secured by the provision of 42 U.S.C. Section 1983 and by the due process and equal protection clauses of the 14th Amendment to the United States Constitution. Plaintiff claimed that this Court had jurisdiction to hear these allegations pursuant to 28 U.S.C. Section 1343.

Plaintiff, an employee of Defendant School District, alleged that his civil rights were violated by the defendant's avowed intention to apply its age 65 mandatory retirement policy to him, effective immediately after June 30, 1978.

Plaintiff requested this Court to enjoin the Defendants from forcing him to retire on June 30, 1978 and from hiring a replacement for his position as an assistant principal in Defendant School District.

After a hearing, the request for a Temporary Restraining Order was granted. The permanent injunction hearing was begun and a Motion dismissing Defendant, Robert Dovey from the case was granted. The hearing against the Defendant School District continued, and in due course this Court permanently enjoined said Defendant from terminating the employment of Plaintiff until the fiscal year of his employment in which he attains the age of 70 years, with costs on the Defendant. The Court gave the parties ten (10) days to move for a new Trial and/or to move to have the Court amend its Findings of Fact and Conclusions of Law.

The matter has been briefed and argued by all parties and this Court makes the following amended Findings of Fact, Discussion, Amended Conclusions of Law, and Amended Final Order and Judgment.

## B. AMENDED FINDINGS OF FACT

1. That the one and only Plaintiff in this case is Raymond J. Kuhar, age 65, who resides at R. D. No. 2, Box 615, Greensburg, Pennsylvania.

2. That the one and only Defendant now in this case is the Greensburg-Salem School District situated in Westmoreland County, Pennsylvania.

(Hereinafter, Raymond J. Kuhar shall be referred to as "Kuhar", and the Greensburg-Salem School District shall be referred to as "School District".)

3. That for approximately the past thirty-two (32) years, Kuhar has been employed by the School District, and for over two (2) years he has been employed by the School District as an Assistant Principal at its Junior High School.

4. That Kuhar has a Bachelor of Science Degree, a Master's Degree in School Administration, and has completed all of his credit work toward a Doctorate Degree.

5. That Kuhar is doing a satisfactory job for the School District, and he is mentally and physically able and qualified to do his present job, and these facts are admitted by the Defendant School District.

6. That Kuhar attained the age of 65 on August 27, 1977.

7. That on April 6, 1978, the President of the United States signed into law the Age Discrimination in Employment Act Amendment of 1978, which had been passed by the United States Congress.

8. That the Congressionally stated purpose of said Federal Act, which becomes effective January 1, 1979, is to reduce the incidence of mandatory retirement for workers in private, state and local employment, and to eliminate mandatory retirement on account of age for most federal workers. This purpose is being accomplished by raising the current upper age limit of 65 as set forth in the Age Discrimination in Employment Act of 1967 to age 70, removing the upper age limit of protection of federal workers and by clarifying the exemption for employee benefit plans to prohibit early mandatory retirement. Protections against all forms of age discrimination now prohibited by the Age Discrimination in Employment Act of 1967 will be extended to older workers in these expanded age groups.

9. That the Congressionally stated public policy underlying the passage of said Amendatory Act of 1978, summarized as follows:

(a) That mandatory retirement based solely upon age is arbitrary and that chronological age alone is a poor indicator of ability to perform a job;

(b) Mandatory retirement does not take into consideration actual differing abilities and capacities of workers;

(c) Forced retirement can cause hardships for older persons through loss of roles and loss of income;

(d) Older persons who wish to be re-employed have a much more difficult time in finding a new job than younger persons;

(e) Society as a whole suffers from mandatory retirement;

(i) Because as a result of mandatory retirement, skills and experience are lost from the work-force resulting in a reduced Gross National Product;

(ii) Mandatory retirement adds a burden to Government Income Maintenance Programs, such as Social Security;

(f) There is a strong evidence to support the proposition that mandatory retirement decreases the life expectancy of persons who are forced into retirement and that the right to work as long as one can work is basic to the right to survive; (underlining supplied)

(g) That reducing mandatory retirement will not worsen the unemployment problem;

(h) That the concept of mandatory retirement only after age 70 will have little effect on recruiting younger people for the work-force;

(i) That increasing the mandatory retirement age to 70 will not prevent job opportunities for minorities and women since employed minorities and women must also grow old;

(j) Mandatory retirement is not a proper method for ridding the work-force of incompetent and/or unproductive workers;

(k) As for job performance, research indicates that older workers were good or better than their younger co-workers with regard to dependability, judgment, work quality, work volume, human relations, absenteeism, and further, older workers were found to have fewer accidents on the job;

10. That School District has a policy relating to retirement stated as follows:

"All employees must retire upon reaching age 65, except that any such employee may complete the school year in which he attains 65 years. Said school year to terminate on June 30". (underlining supplied)

Further, the avowed objective of this mandatory retirement policy of the School District (as well as all of the other School District Administrative and fiscal policies) is to provide the school children of the District the "best education at the most affordable cost." (See Record Page 150 at lines 14 through 18, inclusive; and See again Record Page 189 at lines 21 through 24, inclusive.

11. That Kuhar's contract with the School District makes no reference to said retirement policy, but insures Kuhar the right to and/or opportunity to a hearing if Kuhar requests the same after being notified of his pending termination of employment by a written official termination notice, which notice must be presented to the Professional Employee.

12. That, to date, Kuhar has not been presented with a "termination notice" as required by the contract and by state law. However, the School District, admittedly acting through its Superintendent, by letter dated April 24, 1978, has advised Kuhar's attorney that the School District definitely intended to enforce the mandatory retirement at age 65 policy against Kuhar who has heretofore attained age 65, without advising him that he has a right to an administrative hearing.

13. That it is a fact that the School District is admittedly determined to terminate Kuhar arbitrarily without a hearing, and as a matter of course, and in keeping with its announced policy of mandatory retirement of all employees at age 65.

14. Admittedly, the School District seeks to terminate the employment of Kuhar for no reason other than the fact that the Plaintiff Kuhar has reached the mandatory retirement age of 65 inasmuch as the said retirement policy is established and enforced by the Defendant School District.

15. Admittedly, the School District has advertised for applicants to apply for Kuhar's position with the School District, and said School District has in fact accepted some thirty (30) applications (more or less) from parties who work for the School District and from parties who are employed by School Districts other than Defendant.

16. That the School District Board had intended to meet on June 20, 1978, and had intended to select a person to replace Kuhar as Assistant Principal of the Greensburg-Salem Junior High School.

17. That Kuhar's continued employment in the School District is clearly and specifically threatened by the action of the School District acting through its Board and Superintendent.

18. That the mandatory retirement age for public school employees, such as Kuhar, has been set by the Commonwealth of Pennsylvania at age 70, and this Court finds as a fact that the mandatory retirement at age 65 policy of the School District goes a step further than the Pennsylvania School Code, which code mandates retirement only at age 70. (See 24 P.S. § 11–1122).

19. This Court takes judicial notice of the fact that a presently productive and competent person, such as Kuhar, who is placed in compulsory retirement, is very likely to suffer a severe irreparable physical and psychological harm which will shorten his life expectancy.

See Per Curiam opinion of the United States Supreme Court in *Massachusetts Board of Retirement vs. Murgia*, 427 U.S. 307, 316–317, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and Dissenting opinion, pages 323–325, 96 S.Ct. pages 2569–2574.

See the report of the U.S. House of Representatives' Committee on Education and Labor, the full text of which is part of this record as Defendant's Exhibit "G".

See also, The Legislative History of the *Age Discrimination in Employment Act Amendments of 1978.*

See also the report of the Committee on Human Resources of the United States Senate (Legislative History of the Age Discrimination Employment Act Amendments of 1978) Vol. 4, page 504, May 1978 issue of U.S.Code Congressional and Administrative News.

Further, the Court finds as a fact that Kuhar, if he is mandatorily retired, will suffer a financial loss exceeding $3500.00 per year for the next five years, but the total of said loss is clearly conjectural and speculative. (see Record pages 230 and 245). In addition, the Court finds as a fact that if Kuhar is mandatorily retired as threatened by the School District, he would have suffered the loss of any realistic opportunity for gaining employment and consequently he would have suffered additional irreparable loss for the reason that because Kuhar is now over 65 years old he would not have been protected by the Age Discrimination in Employment Act of 1967. Since the 1978 Amendments to said Act extending coverage of said Act to persons up to 70 years of age did not go into effect until January 1, 1979, Kuhar would have been unprotected by said Act and Amendments thereto for a period of six (6) months. (see Record pages 252 and 253).

20. That the School District could and should have immediately changed its mandatory retirement policy as to Kuhar in conformity with the required provisions of the 1978 Amendments to the Age Discrimination in Employment Act of 1967 without in any way whatsoever adversely affecting or jeopardizing the potential achievement of its announced objective of providing the children of the District "the best education at the most affordable cost."

21. This Court finds as a fact that in any event the School District is compelled by the 1978 Amendments to the Age Discrimination in Employment Act of 1967 to change its mandatory requirement age

from 65 years to 70 years, effective January 1, 1979, and which change in age requirement for mandatory retirement will cover every single person presently employed in the School District, including Kuhar, if he is retained as an employee.

22. The Court finds as a fact that Kuhar is the only employee presently working for the School District who is allegedly subject to the District's present policy of mandatory retirement at age 65, and further, he is the last employee of the District who could ever be subject to said policy under any circumstances, since every other employee of the entire School District will be fully protected by the 1978 Amendment to the Age Discrimination in Employment Act of 1967 against mandatory retirement until they attain the age of 70.

This Court finds as a fact that Kuhar's factual position is unique and that his case does differ from the case of any District employee who was subject to the District's mandatory retirement at age 65 policy in the past, since Kuhar is the one and only employee who has been made subject to said retirement policy since the April 6, 1978 passage of the Amendments to the Age Discrimination in Employment Act of 1967.

23. The Court has heard all of the reasons advanced by the School District in supporting of its contention that its mandatory retirement policy at age 65 as applied to Kuhar in the light of all surrounding circumstances (including the imminent and necessary compulsory change in the District's present retirement policies because of the 1978 Amendments to the Age Discrimination in Employment Act of 1967) rationally furthers a substantial interest of the School District in providing its children the "best education at an affordable cost", and this Court finds as a fact that there was no factual credible and/or competent evidence of any kind presented to this Court which supports the School District's contentions. At most, the School District's evidence in support of its contention that there is a present rational relationship between its mandatory retirement policy at age 65 in light of the change of our national policy on said subject, and its avowed policy to provide the school children of the District "the best education at the most affordable cost", was speculative and conjectural.

## C. DISCUSSION

Plaintiff has been employed by the Defendant for approximately thirty-two (32) years, and in the last two years as the Assistant Principal of the Defendant's Junior High School. Plaintiff holds a Bachelor of Science Degree, a Master's Degree in School Administration, and has completed all of his course work needed for a doctorate in education. The Defendant has admitted on the record that Plaintiff is presently mentally and physically qualified to continue in his present position.

On April 6, 1978, the President of the United States signed into law the Age Discrimination in Employment Act Amendments of 1978, which prohibits mandatory retirement of persons such as Plaintiff prior to age 70. Although the effective enforcement date of this Amendment is January 1, 1979, it is clear from the legislative history that the deferred date of enforcement of the age "70" provisions was not to encourage the continuation of age 65 mandatory retirement policies, but to the contrary, was to give employers time to bring their old retirement policies into conformance with the new law. (See page 107, Text of House Committee Report on the subject bill H.R. 5383). (Defendant's Exhibit "G"). In passing, it might be noted that a neighboring School District of the Defendant, Penn-Trafford, changed their retirement mandatory age to 70 years in order to conform to the new Federal Law (See Record pages 116 and 117).

On April 17, 1978, the Plaintiff, by a letter of his Attorney, requested the Defendant to advise him as to whether the Defendant School District intended to invoke its "age 65 mandatory retirement policy" as to Mr. Kuhar, the Plaintiff, as it had done to other Defendant-employees in the past. (See Defendant's Exhibit "A"). (See also Record 60, 61).

On April 24, 1978, the Defendant's Superintendent of Schools, by letter, responded that the Defendant School District intended to enforce its "age 65 mandatory retirement policy" just as it had done so in the past. (See Defendant's Exhibit "B"). (See also Record 62).

On November 20, 1975, the Plaintiff and Defendant School District entered into a written "professional employee contract" (Defendant's Exhibit "C") which contained a clause requiring Defendant to notify Plaintiff in writing of any pending termination of his employment with reasons for said proposed termination of employment, and further, Defendant was to notify Plaintiff that he would be given an opportunity to be heard if the Plaintiff so wished.

Contrary to the terms of the contract, the School District Defendant advertised for applicants for Plaintiff's job without any formal termination notice to him and without giving Plaintiff an opportunity for a hearing (See Record 34). Further, the Defendant District received thirty applications for Plaintiff's job position, twenty-seven from outside the District. In addition, the advertised salary was from $18,000.00 to $24,000.00 per year, with the upper limit, $3,000.00 per year more than was currently being paid to the Plaintiff. (See Record pages 180 to 185, inclusive). The deadline for applicants to apply for Plaintiff's job was May 31, 1978 after the National Policy of the Government as to mandatory retirement had been changed to age 70. (See Record 160).

In addition, Plaintiff is the last and only administrator in the entire School District who will be affected by the Defendant's present mandatory age 65 retirement policy if it is allowed to be applied to the Plaintiff in this case. (See Record 41, 173). Every other administrative employee in the Defendant School District will not be mandatorily retired until he or she attains the age of 70.

The principal issue to be decided in this case is whether the Defendant's "mandatory retirement at age 65 policy" can be rationally applied to the Plaintiff on June 30, 1978 in the light of the facts of this case in order to further the stated and avowed Defendant's public interest of affording the school children of said District, the best education at the most affordable cost. (See Record 130, 189)

■ Defendant's mandatory retirement at age 65 policy is clearly subject to the less strict, traditional rational basis test whereunder the challenged classification is constitutional if it bears a rational relation to a legitimate state interest. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Under the traditional test, in order not to violate the equal protection clause, the classification " 'must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

■ The Court is mindful that its role does not call upon it to determine the wisdom of the policy. It should be noted that in deciding the question of whether the policy as applied to Plaintiff Kuhar is rationally related to a permissible state interest, the court's inquiry is focused on the present state of facts surrounding the controversy, not just the facts present at the time the District first promulgated its policy. Cf., *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

■ In support of the Defendant's avowed interest of affording the District's children the best education at the most affordable cost, Defendant contended that the "mandatory retirement at age 65 policy" as being applied by the District would tend to reduce excess staff by attrition and not by lay-offs and thereby save the School District money. (Record 117 through 150, and especially 132).

It is clear that this retirement at age 65 policy will be applied to only Mr. Kuhar

alone and cannot be applied in the future to any other administrative employee, and in fact, cannot be applied at this time to the professional (teaching) staff or to the custodial staff because the federal age 70 retirement policy takes effect on January 1, 1979. Under these circumstances it is highly conjectural whether any money can be saved by retiring Mr. Kuhar and in any. event there will be no reduction of staff since the Defendant has advertised for a replacement for Mr. Kuhar at a potential salary, $3,000.00 in excess of what Mr. Kuhar was making on June 30, 1978, which may cause the School District to lose money if Kuhar is discharged. (See Record 185). It is not possible for the application of the mandatory retirement policy at age 65 to rationally advance the stated goal of the Defendant in furnishing its children the best education at the most affordable cost, because said age 65 retirement policy can never again (since April of 1978) be used to reduce staff by attrition, and any possible financial benefit to the School District because of Mr. Kuhar's retirement is most highly conjectural.

The next contention of the School District is that the application of its "mandatory retirement at age 65 policy" to Mr. Kuhar (no other employee of the Defendant other than Mr. Kuhar will ever be subject to this policy) will encourage the bringing of young blood into the District with new ideas. However, it is clear that if Mr. Kuhar would be replaced, the chances are good that he would not be succeeded by "new blood", but by persons who are presently employed within the District. (See Record 183, 184) In addition, because Mr. Kuhar is the only person in the District who can be affected by the "mandatory retirement at age 65 policy", there is no competent evidence in the record that any possible hiring of "new blood" in these special fact circumstances would better furnish the children of the District quality education at an affordable cost since everyone admits that Mr. Kuhar is very well qualified to serve in his present post. On the facts of this case, the aforestated educational aims of the District

have no rational relationship to the outdated "mandatory retirement at age 65 policy" of the Defendant.

Additionally, the Defendant stated through its Superintendent, that the "mandatory retirement at age 65 policy" should be applied to Mr. Kuhar because the job of Assistant Principal "is one of the most pressurized jobs in the school system, and personally I would favor youth over age in that because of all those variables". (See Record 154) The Defendant's Superintendent believes that Assistant Principals should be in their "30's" (Record 154) Clearly this attitude and expression of policy is not only irrational as applied to Mr. Kuhar, but is unlawful under the provisions of the Age Discrimination in Employment Act of 1967 which protected persons age 40 through 64. (The Age Discrimination in Employment Act Amendments of 1978 takes effect on January 1, 1979, although the national policy to protect persons up to age 70 was enunciated on April 6, 1978 when said Amendments were signed into law).

The School District Defendant also contends that the "mandatory retirement at Age 65 policy" should be applied to the Plaintiff because it is necessary to know when people are leaving the system at least five years before they in fact leave, so that the School Board can make "money projections" and "people projections" in order to properly program the various courses of instruction. (See Record 156 to 159, inclusive).

Here again that contention under the circumstances of this case has no rational relationship to attaining such projections since beginning July 1, 1978 (the School District is on a fiscal year beginning July 1, 1978) the Defendant must make all of its projections on the basis of a "mandatory age 70 retirement policy". To apply the "mandatory age 65 retirement policy" to Kuhar will not promote the "money projections" or "people projections" in any possible way.

In fact, because Kuhar must retire at age 70, if the Defendant would establish such a

policy beginning in 1979, the long range planning projections of the District would be totally certain if Kuhar were kept on the payroll, but to the contrary, the long term planning projections would be much more uncertain if a young person in his or her 30's were hired to replace him. This "mandatory retirement at age 65 policy" as applied to Kuhar bears no present rational relationship to a legitimate educational interest and said policy's application to Kuhar certainly will not aid the Defendant in its future planning in any conceivable manner.

It is next argued by the School District that its "mandatory retirement at age 65 policy" as presently applied to Kuhar will aid in a promotional plan and will help move people of quality on upward through the system. (Record 159).

It is clear that it will not promote quality education to move an admittedly well qualified person out of the school system (Mr. Kuhar), just to replace him with another well qualified person. It is not contended here by the Court that mandatory retirement plans will not accomplish a purpose of helping certain employees attain promotions. It is only held here that to still use an outmoded "mandatory retirement at age 65 policy" as to only one well qualified employee in the entire system will not rationally promote quality education when all of the other employees in the entire school system are presently controlled by a "mandatory retirement at age 70 policy". (This is true because this fiscal year will end on June 30, 1979, at which time the new law concerning age discrimination will be in effect). A mandatory retirement at age 70 policy is now the only national policy under the present factual circumstances.

The Defendant next argues that the "mandatory retirement at age 65 policy" allows the District to automatically get rid of incompetent employees who have seniority status. (Record 168, 169, 170) Since said policy could only possibly apply to Mr. Kuhar because he is the only one who is now affected by it, said "age 65 policy" certainly does not presently bear a rational relation-

ship to the avowed educational interest of the District since Mr. Kuhar is admittedly well qualified. All other employees in the District are now under the "Age 70 retirement policy" and have some leg on seniority.

Finally, the School District (See Record 169) argues that the "mandatory retirement age 65 policy" permits the school to bring in new disciplines and new ideas into the District because when a person gets older they lose the incentive to go back to school, therefore, said retirement policy gets rid of the older people who won't go back to school. This policy, which can be applied, if at all, to Mr. Kuhar only, is certainly not rationally applicable to Mr. Kuhar's case and would not advance any of the Defendant's stated educational objectives. Mr. Kuhar has his Bachelor's Degree, his Master's Degree, and as of the early sixties had completed all of his course work for his Doctorate and went to summer school for fourteen straight years (See Record 27, 28).

It is clear beyond doubt that the attempted application of the Defendant School District's "mandatory retirement at age 65 policy" to the Plaintiff under the facts of this case is totally irrational.

It is apparent from the record that inherent in all of the contentions of the Defendant in support of their "age 65 retirement policy" is that said policy was necessary to effectuate long term personnel planning so as to secure a high quality staff in the interest of affording the children of the District "the best education at the most affordable cost". (Record 150) Further, inherent in said policy and as a natural corollary to the objective of securing a high quality staff is the concept that as said "age 65 retirement policy" was to lead to a successful result, the policy had to be uniformly and without exception applied to all of the Defendant's employees and to all classes of the Defendant's employees, (i. e., administrators, professional teaching staff and custodial). (See Record 146)

It became evident on April 6, 1978, upon the passage of the Age Discrimination in

Employment Act Amendments of 1978, that the Defendant's "mandatory retirement at age 65 policy" immediately became obsolete and was no longer a viable policy. Although the act delayed its enforcement features until January 1, 1979, nevertheless the act immediately declared that the new national policy in the United States was to permit all persons such as school teachers to work until they attained the age of 70 years. By law, the Defendant District was compelled to end its "age 65 retirement policy" within six months of the date that it was applying the same to the plaintiff.

In any event it became abundantly clear that the avowed long term objective of the Defendant's "age 65 retirement policy" could never be carried out under any possible set of circumstances. At the time Defendant was applying the same to the Plaintiff, (June 30, 1978) the School Superintendent was making projections as much as six years in advance. (See Record 133, 134, 135 for six years; Record 148 for three years, Record 156 for three years; Record 156 for five years for long range planning; Record 157, 158 mandatory retirement policies to help the long term planning of the Defendant as to its personnel; Record 160 for planning for promotions two years ahead).

As has been noted, in order to be successful, the "mandatory age retirement plan" also had to apply to all of the employees of the District. As of June 30, 1978, the Plaintiff was the only employee of the Defendant School District who was subjected to said "Age 65 Plan". Every other employee of the Defendant District, beginning July 1, 1978, was subject to a "mandatory retirement at age 70" only.

There is no doubt that after the passage of the Age Discrimination in Employment Act Amendments of 1978 on April 6, 1978, the Defendant's "mandatory retirement at age 65 policy" immediately was rendered obsolete. The Defendant School District's attempt to apply said aborted policy to the Plaintiff under the facts of this case is an unconstitutional classification and denies Plaintiff the equal protection of the laws. Said unworkable and obsolete "age 65 mandatory retirement policy" does not bear any rational relationship to the legitimate stated interest of providing the school children of the District the best education at the most affordable cost.

## D. AMENDED CONCLUSIONS OF LAW OF THE COURT

■ 1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343, inasmuch as this Court finds as a matter of law that the classification of the Plaintiff Kuhar, a public school employee by the Defendant Greensburg-Salem School District, based upon age is violative of Kuhar's right to equal protection required by the 14th Amendment to the United States Constitution, in that said District has purported to impose upon Kuhar the requirement that he must mandatorily retire at age 65 effective June 30, 1978, when said School District has failed to affirmatively show that its mandatory retirement policy at age 65 will rationally further its avowed goal of furnishing the children of said School District the "best education at the most affordable cost".

■ 2. Additionally, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343, because the School District has and intends in the future to deny the Plaintiff Kuhar the procedural safeguard of a hearing as required by Kuhar's contract with the School District, as well as being required by Pennsylvania state law, and the 14th Amendment to the United States Constitution, and especially Kuhar's constitutional rights have been infringed in light of the fact that the School District has failed to show any rational and/or justifiable reason for enforcing a "mandatory at age 65 personnel policy" as to Kuhar under the factual circumstances presented.

■ 3. The School Board's enforcement of the Greensburg-Salem School District's mandatory retirement at age 65 policy constitutes state action as the same is required

for this Court to invoke the provisions of the 14th Amendment to the United States Constitution and Title 42 U.S.C. § 1983.

4. This Court does hereby apply to the facts of this matter the "rational basis test" as required by the Supreme Court of the United States in the case of *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) and does find as a matter of law that the mandatory compulsory retirement of all of the employees of the Defendant School District at age 65 since April 6, 1978, and as the School District has applied said policy to Plaintiff Kuhar under the unusual factual circumstances of this case, is unconstitutional and denies him the equal protection of the law guaranteed by the 14th Amendment of the United States Constitution for the reason that the mandatory age 65 classification for the retirement of Kuhar has no rational relationship to the furtherance of the stated and avowed Defendant School District's interest of affording the school children of said District the best education at the most affordable cost; and indeed, and to the contrary, to allow the discharge of an admittedly very competent administrator, such as Plaintiff Kuhar, along with the possible permanent hiring of a less competent substitute administrator at a higher salary would in fact, tend to defeat rather than further the avowed educational interests of the Defendant School District in its children. Further, the attempted application of the School District's mandatory retirement policy at age 65 to the Plaintiff Kuhar is not rationally related to any conceivable state interest, including those advanced by the School District, in light of the unusual factual circumstances present in this case, and therefore, to allow the application of this School District's mandatory retirement policy to the Plaintiff Kuhar would be unconstitutional and a denial of Kuhar's mandatory equal protection rights guaranteed by the 14th Amendment to the United States Constitution.

■ 5. This Court is *not* sustaining any of the Plaintiff's claims under the Federal Age Discrimination in Employment Act of 1967 and/or pursuant to any of its amendments. (See 81 Stat. 602, 29 U.S.C. § 621 et seq. and as amended). However, the effective application of said Act pursuant to the 1978 Amendments effective January 1, 1979, and applicable to all of the Defendant's employees who are now and/or who will be on the Defendant's payroll for the next fiscal year, will give all of said employees the same protection against the School District's application of its present "mandatory retirement at age 65 policy" as is accorded Kuhar by the findings and judgment of this Court. As a matter of law, this Court is convinced that mandatory retirement at age 70 as a School District policy can now be rationally justified only in the context of the announced and effective declaration of the April 6, 1978 New Age Discrimination in Employment Policy of the United States Congress and as approved by the President of the United States. (NOTE: The Plaintiff is contending for the right to work only until and through the year of his 70th birthday). The national policy to the effect that 70 years is the earliest time for mandatory retirement of state and/or municipal employees was enunciated and clearly promulgated on April 6, 1978, even though the enforcement of said declared National Policy was delayed to January 1, 1979, in order to allow for the required changes in many complicated employee retirement plans. In the case at bar, there was no proper evidentiary showing that it was necessary for the School District to delay the implementation of said new policy and/or that a continuation of the "mandatory retirement at age 65 policy" had some rational relationship to the furtherance and implementation of the avowed interest of the School District to provide the school children of said District "the best education at the most affordable cost".

■ 6. This Court finds as a matter of law that the Plaintiff will suffer irreparable damage if injunctive relief is not granted, and further, this Court finds that Plain-

tiff, Raymond J. Kuhar does not have an adequate remedy at law, and that his potential pecuniary losses are not capable of being calculated since there are so many variables that cannot be calculated in terms of money.

### E. AMENDED FINAL ORDER AND JUDGMENT

AND NOW, this 27th day of February, 1979, upon consideration of the Amended Finds of Fact and Amended Conclusions of Law heretobefore made in this matter, Defendant's Motion for a New Trial is denied, and the Defendant Greensburg-Salem School District, acting through its present Board of Directors and/or through the successors of any of the present members of said Board, is hereby permanently enjoined from terminating the employment of the Plaintiff, Raymond J. Kuhar for reasons of age until said Raymond J. Kuhar has completed the fiscal year of his employment for said School District in which he attains the age of 70 years.

Costs shall be paid by the Defendant School District.