410 A.2d 992.

JEAN-YVES DRANS *vs.* PROVIDENCE COLLEGE.

FEBRUARY 1, 1980.

PRESENT: Bevilacqua, C.J., Kelleher and Doris, JJ.

KELLEHER, J.   This appeal is a sequel to our holding in *Drans* v. *Providence College*, 119 R.I. 845, 383 A.2d 1033 (1978). There, the controversy centered around the issue of whether Jean-Yves Drans, a tenured professor at Providence

College as of 1960, was subject to the mandatory retirement age of sixty-five established by the college in 1969. Following an extended discussion of the merits of the arguments of both parties and amici curiae, we determined that

> "the college had the authority to institute a retirement policy for all its faculty members, including those with tenure, but that this power is limited by an implied obligation to make reasonable transition provisions when the common practice within the academic community would dictate such a course of action."

*Drans* v. *Providence College*, 119 R.I. at 861, 383 A.2d at 1042.

In so holding, we vacated the decision of the trial justice that the professor manifested his acceptance of the college's mandatory retirement policy by signing a form contract in 1970 which merely stated his name, status, and increased salary for the ensuing academic year. The trial justice had reasoned that the contract incorporated by implication the mandatory retirement provisions of the Providence College Faculty Manual.

The case was remanded to the Superior Court for further proceedings on the issue of whether the reasonable expectations "within the academic community" would indicate that the professor was eligible for special consideration upon reaching the age of retirement. Specifically, this consideration would be in the form of a transition provision designed to cushion the economic shock incidental to mandatory retirement. On remand, the trial justice commented, "I do not know what academic community the Supreme Court was referring to," and construed our use of the phrase "within the academic community" as meaning solely the community within the bounds of the Providence College campus.[1] It was within this frame of construction that he

---

[1] The trial justice followed this remark by commenting: "All that I know is that this is a controversy between a professor and Providence College and no one else. What Boston University thinks or may do or what the American Association of University Professors thinks or may do is of no consequence in resolving this controversy."

examined the retirement plan of Providence College and con-cluded that the college's award to the professor of an addi-tional year of teaching beyond the age of sixty-five was a rea-sonable and sufficient provision for his transition into retire-ment. The trial justice has erred in taking this narrow view of the academic community alluded to in our prior opinion.

We believe there is nothing ambiguous in our prior use of the phrase "academic community" and would but point out two instances in *Drans* in which the meaning of the phrase was made clear. In our discussion as to the meaning of "tenure," we first said that we would have to look to the cus-tom and usage of the academic community and then referred to a portion of *John F. Davis Co. v. Shepard Co.*, 71 R.I. 499, 47 A.2d 635 (1946). In that case the court alluded to the well-settled principle that there may be times when a term within a contract may carry with it a meaning that is unique to the trade, business, or profession to which the contract re-lates. Thereafter, we defined "tenure" as it is understood within the "academic community," specifically citing in-stances of the common understanding of the term within col-legiate circles in Iowa,[2] New Jersey,[3] and Ohio.[4] Similarly, in our consideration of the 1940 *Statement of Principles on Academic Freedom and Tenure* published by a Joint Confer-ence of the American Association of University Professors and the Association of American Colleges, we stated that "the 1940 Statement, as with their other joint statements, was widely circulated and widely accepted in the academic com-munity and, indeed, by Providence College." *Drans v. Providence College*, 119 R.I. at 858, 383 A.2d at 1040. The sources to which we have just referred graphically indicate that we never considered "academic community" to consist

---

[2]*Collins* v. *Parsons College*, 203 N.W.2d 594 (Iowa 1973).

[3]*American Association of University Professors* v. *Bloomfield College*, 129 N.J. Super. 249, 322 A.2d 846 (1974), *aff'd* 136 N.J. Super. 442, 346 A.2d 615 (App. Div. 1975).

[4]*Rehor* v. *Case Western Reserve University*, 43 Ohio St. 2d 224, 331 N.E.2d 416 (1975).

solely of the professoriate and the administration of Providence College. Rather, we were speaking in terms of what we are now calling a "national academic community,"[5] a phrase which encompasses within its reach all institutions of higher learning in the United States.

When we originally remanded this controversy to the Superior Court, we observed that there are times when those who are employed in academia, be it in a teaching or administrative capacity, recognize that a college administration "must make some type of an accommodation so that the economic security expectations of the tenured may be preserved." *Drans* v. *Providence College*, 119 R.I. at 860, 383 A.2d at 1041. Our remand was for the specific purpose of a trial justice's considering evidence that would indicate whether those who perform their pedagogical and administrative chores within the national academic community believe that Providence College was obligated to make a special transition provision for Professor Drans and, if so, whether the benefits furnished to him have met this obligation. *See Karlen* v. *New York University*, 464 F. Supp. 704 (S.D.N.Y. 1979). Hopefully, upon remand, the litigation will terminate after the trial justice has considered the various views expressed by those interested and then reaches his or her own conclusion as to the issues before him or her.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

Mr. Justice Weisberger did not participate.

*Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Linda J. Kushner,* for plaintiff.

*William F. McMahon,* for defendant.

---

[5]*Krotkoff* v. *Goucher College*, 585 F.2d 675, 678 (4th Cir. 1978).