**Albert J. McALOON**

v.

**BRYANT COLLEGE OF BUSINESS ADMINISTRATION; State of Rhode Island, United States of America.**

**Civ. No. 81–250–D.**

United States District Court,
D. New Hampshire.

Aug. 7, 1981.

**104**

Joseph R. Palumbo, Jr., Newport, R. I., for plaintiff.

John F. Bomster, Providence, R. I., for Bryant College.

Faith LaSalle, Sp. Asst. Atty. Gen., Providence, R. I., for intervenor State.

Office of the U. S. Atty., Providence, R. I., Robert T. Kennedy, U. S. Atty., Concord, N. H., for intervenor U.S.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

■ Involuntarily retired from his position as a professor of psychology for rea-

1. The specific federal statute attacked is contained in a 1978 amendment, 29 U.S.C. § 631(d), to the Age Discrimination In Employment Act, 29 U.S.C. §§ 621–634. The challenged state statute is a 1980 amendment, 5 R.I.Gen.Laws § 28–5–7(G), to the Rhode Island Fair Employment Practices Act, which is set forth in 5 R.I.Gen.Laws §§ 28–5–1 through 28–5–39.

2. On August 3, 1981, the date scheduled for hearing on these motions, the United States, having been notified of the constitutional challenge to 29 U.S.C. § 631(d) in accordance with the provisions of 28 U.S.C. § 2403(a) filed a motion in this court wherein it sought an extension of time to August 28, 1981, to advise the Court as to whether it desired to intervene herein. Inasmuch as counsel already of record had traveled considerable distance to present their oral arguments before this Court, the Court decided to proceed with those arguments as scheduled, although proffering to the Assistant United States Attorney present the opportunity to argue further in support of the motion. Well aware of the purposes of the statutes and rules governing intervention, *Ruotolo v. Ruotolo*, 572 F.2d 336, 338–39 (1st Cir. 1978), the Court believes that the proper exercise of

sons of age, Albert J. McAloon, plaintiff herein, mounts a constitutional challenge to certain federal and state legislation.[1] The matter is before the Court for resolution following argument on cross-motions for summary judgment.[2] The Court has reviewed the pleadings, exhibits, legal memos, and other documents on file. The pertinent facts, concededly undisputed, are as follows.

Plaintiff commenced his teaching career in the psychology department of defendant Bryant College, situate in Smithfield, Rhode Island, on the first day of September 1965, and was afforded tenure on September 1, 1970.[3] Defendant's established employment policy mandates sixty-five as the retirement age for all faculty and administrative personnel, providing a possibility of year-by-year continuation to age seventy.[4]

As plaintiff's sixty-fifth birthday was to occur on February 15, 1980, he requested an extension of employment for the 1980–81 academic year by a letter to the president of defendant transmitted under date of December 28, 1979. Plaintiff's Exhibit B. The response of the president of defendant came forward by letter dated June 4, 1980,

discretion as to the timeliness of the aforesaid motion, *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–2603, 37 L.Ed.2d 648 (1973); Annot. 37 A.L.R.2d 1306, 1316 (1954), warranted proceeding as it did in the instant case. More importantly, in light of the arguments presented by the able counsel for the named defendant and for the intervenor, State of Rhode Island, and considering the result herein reached, it appears that the Court's denial of the motion of the United States, herewith ordered, is fully justified.

3. Plaintiff holds a bachelor's and a master's degree and has completed one year of doctoral study in his chosen field.

4. The retirement policy of Bryant College provides:

   The College has established sixty-five (65) as the mandatory age for retirement for all faculty members and administrative officers. The President may, with the approval of the Board of Trustees, continue appointments on a year-by-year basis until the faculty member reaches age 70.

   Plaintiff's Exhibit A.

and therein plaintiff was advised that the trustees had considered his request but had decided not to grant it as requested. Plaintiff's Exhibit C. However, plaintiff was granted a partial extension until the end of the 1980 fall term, with his employment duties to cease as of December 31, 1980. *Id.* The granting of the partial extension was supplemented by a letter from the defendant's vice president for academic affairs dated August 21, 1980. Plaintiff's Exhibit D. There is no claim that plaintiff's teaching ability or his mental or physical capacities have been in any way affected by the mere fact that he has reached the age of sixty-five.

The Age Discrimination In Employment Act (ADEA), 29 U.S.C. §§ 621–634, was originally enacted by the Congress of the United States in December of 1967. Designed basically to alleviate barriers to the employment and retention of workers perceived to be the victims of discrimination solely because of age, it originally mandated that such discrimination was barred as to "individuals who are at least 40 years of age but less than 65 years of age". 29 U.S.C. § 631. In 1978, additional amendments to the statute were enacted, including a raising of the upper limit of employment age from sixty-five to seventy years. 29 U.S.C. § 631(a). Included among additional amendments, however, were certain exemptions,[5] one of which, mandated for repeal as of July 1, 1982, is here at issue. This amendment provides

> [n]othing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age but not 70 years of age, and who is serving under a contract of unlimited tenure (or similar arrangement pro-

viding for unlimited tenure) at an institution of higher education . . . .

29 U.S.C. § 631(d).

As originally enacted in 1949, the Rhode Island Fair Employment Practices Act (FEPA), 5 R.I.Gen.Laws § 28–5–1 through § 28–5–39, was directed toward discrimination in employment based on factors other than age. As subsequently amended, however, the statute substantially tracked 29 U.S.C. § 631(d), and currently provides:

> From July 1, 1980, until July 1, 1982, nothing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained sixty-five (65) years of age but not seventy (70) years of age and who is serving under a contract of unlimited tenure (or similar arrangement providing for unlimited tenure) at an institution of higher education.

5 R.I.Gen.Laws § 28–5–7(G).

The major focus of the plaintiff's arguments is to the effect that, inasmuch as it is conceded that *his* ability to teach is unaffected by *his* attainment of age sixty-five, and as the exemptions above outlined clearly bear no rational relationship [6] to the stated purposes of the legislation, such legislation must be declared constitutionally invalid as a deprivation of equal protection. We commence our evaluation of this argument with a brief review of the nature and purpose of academic tenure.

■ The term "tenure" bears common reference to the teaching employment status generally granted after a probationary period which serves to protect a teacher from dismissal except for serious misconduct or incompetence. *Drans v. Providence College*, 383 A.2d 1033, 1039 (R.I.1978) (and authorities therein cited).[7] The primary

---

**5.** 29 U.S.C. § 631(c) contains an exemption which permits the mandatory retirement of employees attaining sixty-five years of age who have held certain bona fide executive or policy-making positions provided that their vested compensation aggregates at least $27,000. This exemption is not here at issue.

**6.** All parties herein concede that the constitutional test of "rational relation" is here to be applied. *Massachusetts Board of Retirement v.*

*Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

**7.** *Drans v. Providence College,* 383 A.2d 1033 (R.I.1978), concerned the contention of a professor, having acquired tenure prior to the establishment by the defendants of its mandatory retirement policy, he was not subject to such retirement. The Rhode Island Supreme Court held plaintiff was not exempt from the retirement policy established after his acquisition of

function served by the grant of tenure is the preservation of academic freedom effected through the provision of job security. Scholars are thereby encouraged to vigorously pursue and disseminate research without fear of reprisal or rebuke from those who support conventional wisdom. *Id. See also* Annot. 66 A.L.R.3d 1018, *et seq.*

But the mere acquisition of tenure does not preclude

> the imposition of a mandatory retirement policy under all circumstances. If the scope of tenurial protection is no broader than necessary to protect academic freedom and to provide enough job security *to make the profession attractive to young men and women,* then an academic institution should have the authority to institute a mandatory retirement program. *As long as the retirement plan is adopted in good faith, the age chosen is reasonable, and the policy is uniformly applied to all faculty members, the essential functions of tenure will not be compromised.*

*Drans v. Providence College, supra,* 383 A.2d at 1039 (citation omitted; emphasis added).

In the instant case, no claim is advanced nor has any evidence been proffered that the retirement policy of defendant College was adopted other than in good faith, that the age chosen was unreasonable, or that the policy was not uniformly applied as to all faculty members. But plaintiff contends that the express purposes of the ADEA as set forth in 29 U.S.C. § 621 make clear that, under the rationale of *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the exemptions here at issue bear no reasonable relation to such purposes. Plaintiff would have it that the Court should accept the amendments to the challenged statutes (*i. e.,* those increas-

ing the upper age limit provisions to seventy, 29 U.S.C. § 631[a], 5 R.I.Gen.Laws 28–5–6[I]), but invalidate those which exempt tenured faculty from statutory protection. Stressing selected portions of the legislative history of the 1978 amendment, plaintiff concludes that the exemption for tenured faculty comprises "a distinction without a difference". *See* p. 13, Plaintiff's Memo. The Court respectfully disagrees with this argument, and rules that it is without legal merit.

In the context of a mandatory retirement policy, consideration must commence with review of the decision in *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), wherein the statute under attack mandated the retirement *at age 60* of participants in the Foreign Service retirement system. Having concluded that neither a "suspect group" nor a "fundamental interest" in the constitutional sense was involved, the Court therein stated,

> [t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

440 U.S. at 97, 99 S.Ct. at 942–943.

In enacting the 1978 legislative exemption now detailed in 29 U.S.C. § 631(d), the Congress considered the special type of employer/employee relationship in educational institutions, stating as follows:

such tenure, but remanded for consideration of the trial court as to whether reasonable expectations "within the academic community" would entitle plaintiff to special consideration by way of a transition procedure designed to cushion the economic shock incident to such retirement. In a subsequent opinion, 410 A.2d 992 (R.I.1980), the Court again remanded the case, holding that the trial court erred follow-

ing initial remand in holding that the "academic community" was limited to the academic community within the bounds of the defendant College. In the instant case, it appears that plaintiff was at all pertinent times aware of the retirement provisions, and no claim is made that any of his reasonable economic expectations were thwarted by the application of the retirement policy as to him.

Many colleges and universities maintain that for the foreseeable future the number of available faculty positions will be closely related to the number of retirements, thereby making it difficult to employ younger professors, particularly women and minorities. Moreover, the financial burden on already hard-pressed institutions of higher learning may be increased by this legislation, because it may require the retention of highly paid senior employees for additional years.

Concerns were expressed by the committee that although it is theoretically possible to discharge tenured faculty for cause, the difficulty of objectively evaluating the performance of such employee makes such good cause discharges difficult. The committee therefore adopted an amendment offered by Senator Chafee to permit colleges and universities to maintain compulsory retirement policies for faculty at age 65 or above who are serving under a contract of unlimited tenure or similar arrangement providing for unlimited tenure.

S.Rep.No.95–493, Oct. 12, 1977, at 8, 9, reprinted in 3 U.S.Code Cong. & Ad.News, 95th Cong. [1978] 504, at 511, 512.[8]

Support for the above-quoted legislative history, particularly with reference to the perception of female and minority professors that they are victimized by discrimination in academic advancement is to be found in reported cases in this Circuit. See Sweeney v. Board of Trustees of Keene State College, 569 F.2d 169 (1st Cir.), vacated and remanded, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), appeal on remand, 604 F.2d 106 (1st Cir. 1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); Lamphere v. Brown University, 553 F.2d 714 (1st Cir. 1977); Lamphere v.

Brown University, 491 F.Supp. 232 (D.R.I. 1980); Huang v. College of the Holy Cross, 436 F.Supp. 639 (D.Mass.1977); Banerjee v. Board of Trustees of Smith College, 495 F.Supp. 1148 (D.Mass.1980). And, as what the Court considers to be the better-reasoned decisions make clear, mandatory retirement policies contained in statutes of the type here at issue do not give rise to a denial of constitutional due process. Lamb v. Scripps College, 627 F.2d 1015 (9th Cir. 1980); Kuhar v. Greensburg-Salem School District, 616 F.2d 676 (3d Cir. 1980);[9] Martin v. Tamaki, 607 F.2d 307 (9th Cir. 1979); Palmer v. Ticcione, 576 F.2d 459 (2d Cir. 1978); Issarescu v. Cleland, 465 F.Supp. 657 (D.R.I.1979). Nor do we find any persuasive merit in plaintiff's suggestion that he should be treated, inter alia, "the same as . . . lawyers and judges" (Plaintiff's Reply Memo at p. 4), particularly in light of such equally well-reasoned decisions as Malmed v. Thornburgh, 621 F.2d 565 (3d Cir.), cert. denied, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); Trafelet v. Thompson, 594 F.2d 623 (7th Cir.), cert. denied, 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979); Rubino v. Ghezzi, 512 F.2d 431 (2d Cir.), cert. denied, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975); and Slate v. Noll, 474 F.Supp. 882 (W.D.Wis. 1979) (Three-Judge Ct.), aff'd, 444 U.S. 1007, 100 S.Ct. 655, 62 L.Ed.2d 637 (1980).

Particularly pertinent to the instant case is the decision in Lamb v. Scripps College, supra. Therein, the plaintiff attacked a California statute on equal protection grounds, urging that its requirement of compulsory retirement of tenured private college professors between the ages of sixty-five to sixty-nine violated the Equal Protection Clause of the Fourteenth Amendment by distinguishing irrationally between

**8.** In the course of its analysis, the Court has also carefully reviewed the remarks of the legislators set forth in the Congressional Record as detailed in the briefs of defendant and the intervenor herein.

**9.** Plaintiff's original memo of law was filed on February 25, 1981, and pp. 15–18 thereof describe in detail the findings of the district court in Kuhar v. Greensburg-Salem School District,

466 F.Supp. 806 (W.D.Pa.1979). However, as hereinabove indicated, that decision was reversed on February 19, 1980, Kuhar v. Greensburg-Salem School District, 616 F.2d 676 (3d Cir. 1980), and the Court is frankly puzzled as to why plaintiff would fail to call to its attention the fact that a case upon which plaintiff places so much stress had been reversed on appeal.

tenured private college professors within such range of ages and other employees, and between such professors and those either younger than sixty-five or older than sixty-nine. In affirming the trial court's dismissal, the Ninth Circuit, rejecting the plaintiff's reliance on the decision on *Gault v. Garrison,* 569 F.2d 993 (7th Cir. 1977), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979), and pointing out that the proper test was as set forth in *Vance v. Bradley, supra,* stated in pertinent part

> [t]he California Legislature could have reasonably concluded that the challenged policy would open up employment opportunities for younger professors and for minorities, ... bring in younger faculty with fresh ideas and techniques, ... stimulate performance among younger faculty members by assuring a predictable number of available positions, ... allow universities to plan in advance for staffing needs, ... and avoid the difficulties inherent in evaluating the individual performances of professors aged 65 and over ....

627 F.2d at 1021, 1022 (citations omitted). Here, as in *Lamb v. Scripps College, supra,* the state statutory provisions parallel the federal amendments to ADEA, the rationale contained in the legislative history of the federal exemption is applicable to both state and federal statutes, and both statutes here challenged are, as the Court rules, constitutionally valid. As has been elsewhere stated,

> [w]hen the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern.... The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility. ... In assessing an equal protection challenge, a court is called upon only to measure the basic validity of the legislative classification. ... When some other independent right is not at stake, ...

and when there is no 'reason to infer antipathy', ... it is presumed that 'even improvident decisions will eventually be rectified by the democratic process ....'

*Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979) (citations omitted).

The Court finds and rules that the 1978 exemption for tenured faculty detailed in 29 U.S.C. § 631(d) [10] and its companion statute set forth in 5 R.I.Gen.Laws 28–5–7(G) do not, in their application to the plaintiff or others similarly situated, result in a deprivation of due process or equal protection of the laws in the constitutional sense. For the reasons hereinabove outlined, the motion of the defendant for summary judgment is herewith granted, while the motion of plaintiff for summary judgment must be and it is herewith denied.

SO ORDERED.

---

**10.** The fact that the exemption set forth in 29 U.S.C. § 631(d) is only temporary and scheduled to expire on July 1, 1982, is of little moment. In light of the economic stress currently imposed on institutions of higher education, it is not irrational for the legislative bodies concerned to afford such institutions a reasonable period of time during which the composition of faculties might be reviewed in light of the expertise possessed by such institutions.