**Norman J. O'MALLEY,
Plaintiff-Appellant,**

v.

**GTE SERVICE CORPORATION,
Defendant-Appellee.**

**No. 661, Docket 84–7638.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1985.

Decided March 26, 1985.

Jay S. Siegel, Hartford, Conn. (Siegel, O'Connor & Kainen, P.C., Hartford, Conn., Ezra D. Singer, Stamford, Conn., of counsel), for defendant-appellee.

Norman J. O'Malley, New Canaan, Conn., pro se.

Before FEINBERG, Chief Judge, FRIENDLY and KAUFMAN, Circuit Judges.

FEINBERG, Chief Judge:

Plaintiff Norman J. O'Malley, appearing pro se, appeals from an order of the District of Connecticut, T.F. Gilroy Daly, Ch.J., granting summary judgment to defendant GTE Service Corporation and dismissing O'Malley's claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., on the ground that he failed to file his charge in timely fashion with the relevant state and federal agencies.

Plaintiff worked for GTE for 26 years and held the position of Assistant General Counsel—Patents when he was mandatorily retired on January 1, 1982, shortly after his 65th birthday. In this capacity, he supervised some 15 attorneys and an equal number of patent agents. O'Malley alleges that his involuntary retirement violated the ADEA, which bars compulsory retirement before age 70, except for an employee who is in a "bona fide executive or a high policy-making position" and who will receive aggregate retirement benefits of no less than $27,000 per year. 29 U.S.C. § 631(a) and (c). Plaintiff was earning over $90,000 per year when he retired, and it is apparently undisputed that he received a lump sum pension payout of $254,485 plus some additional benefits. He alleges, however, that he was not a "bona fide executive" within the meaning of the ADEA.

In October 1982, plaintiff filed charges with the Connecticut Commission on Human Rights and Opportunities (CCHRO), and later that month with the Equal Em-

ployment Opportunity Commission (EEOC). The CCHRO dismissed plaintiff's claim as untimely filed under the relevant state statute, Conn.Gen.Stat. § 46a–82. We are informed that the EEOC took no action after GTE raised the timeliness issue, and discontinued processing the complaint in June 1983. Plaintiff filed this lawsuit in December 1983, and thereafter sought discovery on aspects of GTE's retirement policies. In February 1984, GTE moved to stay discovery pending a ruling on its motion for summary judgment, which it brought shortly thereafter. In June 1984, Magistrate Thomas P. Smith stayed discovery and recommended in a written opinion that GTE's motion for summary judgment be granted because O'Malley did not file his claim within the relevant statutory time limit. On June 26, 1984, Chief Judge Daly adopted the magistrate's ruling. This appeal followed.

The ADEA provides that an aggrieved person may not file a civil action unless a charge has first been filed with the EEOC. The charge must be filed with the EEOC within 180 days after the occurrence of the "alleged unlawful practice," or within 300 days if the state has an agency with authority over such claims. 29 U.S.C. § 626(d). The parties apparently agree that the 300-day period applies here, and that O'Malley filed his EEOC claim on or about October 25, 1982; this was less than 300 days after his last date of employment, although barely so. However, the last date of employment does not necessarily begin the running of this statutory limitation period.

In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court determined that the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257, 101 S.Ct. at

504. *Ricks* was a Title VII case, and *Chardon* a section 1983 suit, but their holdings have been applied to ADEA claims as well. *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 23 (2d Cir.1985); *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir.1981), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

The magistrate determined that GTE had advised O'Malley as early as July 1981 that he would have to retire "upon attaining 65." Indeed, the record indicates that there is no genuine dispute that GTE informed O'Malley of its position as early as December 1980. It is also clear that O'Malley participated in the selection of his successor during the fall of 1981. In documents dated September 14, 1981, and November 19, 1981, O'Malley confirmed in writing his knowledge of his impending early retirement, and on November 20, 1981, GTE issued an announcement to the same effect. O'Malley did not, however, file his claim with the EEOC until at least 338 days after the latest of the above dates.

Relying on *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), O'Malley argues that his claim should nonetheless be considered timely. In *Zipes*, the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132 (footnote omitted). O'Malley seeks to come within such an exception to the statutory time limitation.

O'Malley alleges, first, that the limitation period did not begin to run until the date he retired, January 1, 1982, because GTE's retirement policy is facially discriminatory and thus constitutes a "continuing violation" of the ADEA. GTE's Human Resources Policy No. 116 (HR 116) states GTE's intention to adhere to the ADEA, and provides in Section 2.21 as follows:

An employee will be retired at age 65 ... if the employee has been an executive for two years prior to age 65, and the employee has an immediate nonforfeitable annual retirement benefit of $27,000.

O'Malley argues that the absence of the words "bona fide" before the word "executive" violates the ADEA, since Congress intended in Section 631, quoted above, to create only a very narrow exception to the mandatory minimum retirement age of 70 years. O'Malley claims that he, and other ordinary executives and middle managers, are illegally covered by HR 116. O'Malley also points to a September 1981 GTE list that contains the names of all the in-house lawyers, their ages and their "number of years to retirement at 65."

In arguing that a facially discriminatory policy is a continuing violation which, in turn, delays the commencement of the statute of limitations period, O'Malley relies on *EEOC v. Home Insurance Co.*, 553 F.Supp. 704 (S.D.N.Y.1982). In *Home Insurance*, the employer unlawfully reduced the mandatory retirement age and mailed notices of the change to all employees' homes. When later sued in federal court by the EEOC, the employer interposed a statute of limitations defense, alleging that the plaintiffs' claims had accrued when they learned of the new policy, or at the latest, when each employee received personal notice of his or her retirement date. Judge Sand, in a thoughtful opinion, rejected this contention, noting that it would "effectively insulate forever from legal redress an unlawful retirement policy two or three years subsequent to its adoption." 553 F.Supp. at 712. He went on to hold that

> where an employer maintains a discriminatory mandatory retirement provision, the timeliness of a claim asserting unlawful termination thereunder should be determined with reference to the earlier of either the last day of employment, or, if applicable, the date on which the employer eliminates the unlawful provision.

*Id.* at 713.

■ We agree with the reasoning of *Home Insurance*. The *Ricks-Chardon*

rule need not be applied so rigidly as to require an employee to file an age discrimination charge when the employee first learns of a discriminatory plan, even though the employee's own retirement date may be as much as 30 or 35 years away. A literal application of the rule could mean that the statute of limitations would begin to run the day the employee started work, an obviously undesirable result. *Heiar v. Crawford County*, 746 F.2d 1190, 1194 (7th Cir.1984). Indeed, we made clear only last month, in an ADEA case also brought *pro se* by an attorney who had been discharged by a corporation, that

> [w]hen employees are hired or refused employment pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it. . . .

*Miller v. International Telephone & Telegraph Corp., supra*, at 25; *see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). In *Miller*, however, we also pointed out that to come within this rule, such a continuing violation must be clearly asserted both in the EEOC filing and in the district court complaint. *Miller, supra*, at 24. In this case, we do not know whether O'Malley made such an assertion in his EEOC filing since that document was not introduced into the record below.

■ In any event, O'Malley did not make out a colorable case in the district court of a continuing violation. Unlike the policy in *Home Insurance*, which expressly set an illegal retirement age, the policy in GTE's HR 116 is facially proper. The absence of the words "bona fide" preceding the word "executive" in GTE's statement of its policy is certainly not fatal, particularly in light of the company's stated intention to adhere to the requirements of the ADEA. The only other significant support plaintiff presented below is the above-described list

of employees and their prospective retirement dates. But this was apparently a list of all in-house lawyers, nothing more than a long term staffing projection, with the dates at which the option of retirement at age 65 would become available. Nothing in the record below indicated that GTE's policy was to require the employees on the list to retire at that age.

O'Malley further insists that in staying his discovery requests, the district court prohibited him from obtaining the information necessary to show that GTE's retirement policy does not conform to the ADEA. But O'Malley's motion relied almost exclusively on the absence of the words "bona fide" and the list just referred to. These were simply insufficient to sustain the discovery request. *Cf. Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984).

■ Plaintiff also claims that GTE is equitably estopped from raising the affirmative defense of tardy filing. He contends he was deterred from filing his claim until GTE assured him that he would receive certain non-vested, enhanced retirement benefits which he had sought before he retired. On May 7, 1982, GTE advised him of his eligibility for the benefits, but did not send him the application forms until September 22, 1982, shortly before he filed a charge with the CCHRO. O'Malley claims that GTE should have known that the pendency of this matter, and his fear of losing the extra benefits, would chill his freedom to file a claim. He asserts that GTE is thus estopped from pleading a time-bar defense.

In the district court, however, O'Malley provided no evidence of deliberate misconduct or bad faith by GTE sufficient to invoke equitable estoppel. *See Pfister v. Allied Corp.*, 539 F.Supp. 224 (S.D.N.Y. 1982). Indeed, plaintiff did not include any reference to the matter in his complaint, and apparently raised it before the magistrate only as an afterthought once he belatedly realized his claim was time-barred. In his memorandum opposing GTE's motion for summary judgment, plaintiff admitted

that he had not read the case law on ADEA filing requirements until September 1982. Furthermore, to penalize GTE for its continued efforts after O'Malley's retirement to provide him with additional benefits would be unfair, and would discourage employers from taking such favorable, but optional, measures. *Pfister, supra,* 539 F.Supp. at 227.

■ Under the circumstances, and given the absence of evidence of "deliberate design" or of actions which GTE "should unmistakably have understood would cause the employee to delay filing his charge," *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982), we see no grounds to lift the statutory bar. *See also Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 359 (8th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109–11 (2d Cir. 1978). In sum, plaintiff, although an attorney of many years' experience, utterly neglected to ascertain the filing requirements under the ADEA. There is simply no basis for holding GTE responsible for this error. We realize, of course, that the ADEA is remedial legislation which should not be technically construed. But the statute contains time limits and "there is no indication that Congress intended to exempt from the statute of limitations a plaintiff who simply slept on his right to sue." *Pfister, supra,* 539 F.Supp. at 227.

The judgment of the district court is affirmed.