11 F.3d 967
 63 Fair Empl.Prac.Cas. (BNA) 602,
63 Empl. Prac. Dec. P 42,751, 87 Ed. Law Rep. 733
 Leroy CROZIER, Plaintiff-Appellant,
v.
Belva P. HOWARD, Paul M. Barby, Leonard Wilkins, Michael
Brown, Sandy Garrett, Tracy Kelly, Wayne Salisbury, Varree
F. Wynn, Don Carpenter, as Members of the Board of Regents
for Oklahoma Colleges, Defendants-Appellees,
and
Bill J. Lillard, President of Central State University, Defendant.
 No. 92-6125.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 30, 1993.
 
 David W. Lee, Oklahoma City, OK, for plaintiff-appellant.
 Sheridan A. McCaffree, Asst. Atty. Gen. (Susan Brimer Loving, Atty. Gen. of Oklahoma, with him on the brief), Oklahoma City, OK, for defendants-appellees.
 Before BRORBY and EBEL, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Leroy Crozier was a tenured professor of political science and Chair of the Political Science Department at the University of Central Oklahoma in Edmond, Oklahoma, having been employed by the University on a full-time basis since 1966. The University of Central Oklahoma and five other regional state universities are governed by a common Board of Regents ("Board").[1] The Board is authorized by statute to adopt such rules and regulations as are necessary to govern the institutions under its control. Okla.Stat. tit. 70, Sec. 3510 (1990). For each of the six universities under its supervision and control the Board had a written policy that required faculty members to retire at the end of the school year in which they reach the age of 70 years. Professor Crozier was born October 14, 1919, and became 70 years old on October 14, 1989. Under the Board's compulsory retirement rule, Professor Crozier would be involuntarily retired at the end of the 1989-90 school year.
 
 
 2
 Sometime in the fall of 1989, Professor Crozier approached Dr. Bill Lillard, the President of the University, and asked that he be allowed to stay past the age of compulsory retirement. Dr. Lillard said his recollection was that Professor Crozier wanted to participate in the University's centennial year occurring in 1990-91. Professor Crozier stated that he desired to stay on for three more years when he would have stepped down as Chair of the Political Science Department. In any event, Dr. Lillard recommended that the Board allow Professor Crozier to remain as a professor beyond the age of 70. The Board, pursuant to Dr. Lillard's recommendation, granted Professor Crozier's request and he was given permission to remain as a professor at the University for the school year 1990-91, with the understanding that any further extension would be taken up at the end of that year.
 
 
 3
 Sometime in February, 1991, Professor Crozier again inquired of Dr. Lillard about a further extension. Dr. Lillard was at first noncommittal, but on April 4, 1991, advised Professor Crozier that his request for another year's extension "is not approved by this office," and he so advised the Board. As a result, Professor Crozier was involuntarily retired at the end of the 1990-91 school year.
 
 
 4
 It was in this general setting that Professor Crozier initiated the present action in the United States District Court for the Western District of Oklahoma. In the present appeal, we are concerned with two of the claims made by Professor Crozier in the district court, namely his claim that the Board's compulsory retirement policy at the age of 70 violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634, and an alternative claim that the Board's compulsory retirement policy violated the Equal Protection Clause of the Fourteenth Amendment. Named as defendants were the members of the Board and Dr. Lillard.
 
 
 5
 Professor Crozier also asked for a preliminary injunction seeking to prevent his forced retirement. After a hearing, this request was denied. Crozier v. Howard, et al, 772 F.Supp. 1192 (W.D.Okla.1991). Thereafter Professor Crozier filed a motion for partial summary judgment in his favor on his claim based on the ADEA, contending, as indicated, that the Board's rule violated the provision of ADEA, but recognizing, however, that under the ADEA the issue of willfulness on the part of the defendants was a fact issue to be resolved by a jury. This motion was denied.
 
 
 6
 In the meantime, the Board also filed a motion for summary judgment. It was then stipulated by the parties that all of the evidentiary matter received at the hearing on Professor Crozier's motion for preliminary injunction could be considered by the district court in connection with the Board's motion for summary judgment. The district court granted the Board's motion for summary judgment, holding that the Board's compulsory retirement rule at age 70 did not violate the ADEA because of the exemption set forth in 29 U.S.C. Sec. 631(d),[2] and that the rule did not offend the Equal Protection Clause of the Fourteenth Amendment. Professor Crozier appeals the judgment of the district court dismissing his Complaint.
 
 
 7
 In denying Professor Crozier's motion for partial summary judgment on his ADEA claim, the district court held that by virtue of 29 U.S.C. Sec. 631(d) the Board's "compulsory retirement" of Professor Crozier did not violate the ADEA. It was on this basis that the district court later granted summary judgment in favor of the Board on Professor Crozier's ADEA claim. We agree with the district court's reading of 29 U.S.C. Sec. 631(d) and its application thereof to the present facts.
 
 
 8
 Limited background may serve to place this particular matter in focus. The ADEA was enacted in 1967 and covered only private employers with more than twenty employees and protected individuals between the ages of forty and sixty-five. 29 U.S.C. Secs. 621-634 (1967). The Act was amended in 1974 to cover public employees. The Act was again amended in 1978 to extend the upper limit of the protected group to the age of seventy. 29 U.S.C. Sec. 631(a) (1978). The 1978 Amendments also allowed the compulsory retirement of professors serving at institutions of higher education under a contract of unlimited tenure, which provision was mandated for repeal on July 1, 1982. 29 U.S.C. Sec. 631(d). The exemption from the provisions of the ADEA for unlimited tenured college and university professors was later re-enacted in the same language as the 1978 amendment and the exemption extends until December 31, 1993. The Act was last amended in 1986 and removed the seventy-year ceiling on the upper age limit, to the end that there was no longer any upper limit. 29 U.S.C. Sec. 631(a). For additional background, see such cases as McAloon v. Bryant College of Business Admin., 520 F.Supp. 103, 105-07 (D.N.H.1981) and Mittelstaedt v. Bd. of Trustees of the Univ. of Arkansas, 487 F.Supp. 960, 965-67 (E.D.Ark.1980).
 
 
 9
 The main thrust of the ADEA is set forth in 29 U.S.C. Sec. 623(a)(1) and provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual ... because of such individual's age."[3] However, as indicated, 29 U.S.C. Sec. 631(d) provides that nothing in the ADEA should be construed to prohibit "compulsory retirement of any employee who has attained 70 years of age, and who is serving under a contract of unlimited tenure ... at an institution of higher education (as defined by section 1141(a) of Title 20)."
 
 
 10
 Professor Crozier's argument in support of his belief that he does not come within the purview of 29 U.S.C. Sec. 631(d) runs as follows: (1) he was admittedly serving under a contract of "unlimited tenure" with the University of Central Oklahoma until the end of the 1989-90 school; (2) however, when he was granted an extension for one year beyond the University's policy of compulsory retirement at age seventy, his contract of "unlimited tenure" ended; (3) thereafter his contract was not a contract of "unlimited tenure," but a contract of "limited tenure," namely, one year; and (4) therefore, he does not come within the purview of 29 U.S.C. Sec. 631(d). The district court rejected this argument, as do we.
 
 
 11
 To accept Professor Crozier's construction of 29 U.S.C. Sec. 631(d), and its application to his case, the University in May 1990, at the end of the 1989-90 school year, could have under the Board's retirement policy forced him to retire and such would not have violated the ADEA. However, because he sought and obtained from the Board a one-year extension of his otherwise involuntary retirement date, Professor Crozier contends that he was no longer under a contract of "unlimited tenure," and, accordingly, he did not come within the exception set forth in 29 U.S.C. Sec. 631(d). Therefore, according to Professor Crozier, he was within the purview of the ADEA's general prohibition against discharge from employment "because of age." This would mean that thereafter so long as he lived he could only be retired for cause or budgetary restraints, but never because of his age. We eschew Professor Crozier's construction, and application, of Sec. 631(d).
 
 
 12
 Our attention has not been drawn to any reported case considering the precise problem at hand. McAloon v. Bryant College of Business Admin., 520 F.Supp. 103 (D.N.H.1981), relied on by the Board, did involve a college professor who was about to be involuntarily retired under an employment policy that mandated retirement when a professor became sixty-five. In that case the professor asked for an extension of his employment for a year. His request was denied, although he was granted a partial extension until the end of the fall term when his employment ceased altogether. At the time of McAloon, 29 U.S.C. Sec. 631(d) provided that nothing in the ADEA prohibited the compulsory retirement of an employee who has attained the age of sixty-five and is serving under a contract of unlimited tenure at an institution of higher education.
 
 
 13
 In that setting the professor in McAloon brought suit in the United States District Court for the District of New Hampshire, alleging that 29 U.S.C. Sec. 631(d) and a local state statute paralleling Sec. 631(d) violated the Due Process and Equal Protection Clauses of the United States Constitution. The professor in McAloon did not claim that because he received a three-month extension of employment after the year in which he reached sixty-five he no longer had unlimited tenure and therefore did not come within the purview of 29 U.S.C. Sec. 631(d).
 
 
 14
 In McAloon the district court held that neither 29 U.S.C. Sec. 631(d) nor the state counterpart violated the Due Process or Equal Protection provisions of the United States Constitution. In thus holding, the district court spoke of "tenure" as follows:
 
 
 15
 The term "tenure" bears common reference to the teaching employment status generally granted after a probationary period which serves to protect a teacher from dismissal except for serious misconduct or incompetence. Drans v. Providence College, [119 R.I. 845] 383 A.2d 1033, 1039 (R.I.1978) (and authorities therein cited) (footnote omitted). The primary function served by the grant of tenure is the preservation of academic freedom effected through the provision of job security. Scholars are thereby encouraged to vigorously pursue and disseminate research without fear of reprisal or rebuke from those who support conventional wisdom. Id. See also Annot. 66 A.L.R.3d 1018, et seq.
 
 
 16
 But the mere acquisition of tenure does not preclude
 
 
 17
 the imposition of a mandatory retirement policy under all circumstances. If the scope of tenurial protection is no broader than necessary to protect academic freedom and to provide enough job security to make the profession attractive to young men and women, then an academic institution should have the authority to institute a mandatory retirement program. As long as the retirement plan is adopted in good faith, the age chosen is reasonable, and the policy is uniformly applied to all faculty members, the essential functions of tenure will not be compromised.
 
 
 18
 Drans v. Providence College, supra, 383 A.2d at 1039 (citation omitted; emphasis added).
 
 
 19
 The phrase "unlimited tenure" is not defined in ADEA. However, the Equal Employment Opportunity Commission has promulgated rules and regulations which address the matter.[4] 29 C.F.R. Sec. 1625.11(e)(1) provides as follows:
 
 
 20
 [T]he almost universally accepted definition of academic 'tenure' is an arrangement under which certain appointments in an institution of higher education are continued until retirement for age or physical disability, subject to dismissal for adequate cause or under extraordinary circumstances on account of financial exigency or change of institutional program. Adopting that definition, it is evident that the word 'unlimited' refers to the duration of tenure. Therefore, a contract (or other similar arrangement) which is limited to a specific term (for example, one year or 10 years) will not meet the requirements of the exemption.
 
 
 21
 Further, the Senate Committee Report relating to the original exemption for tenured professors, S.Rep. No. 95-493, 95 Cong., 1st Sess. 8-9 (1977), U.S.Code Cong. & Admin.News 1978, pp. 504, 511-12, contains the following:
 
 
 22
 Many colleges and universities maintain that for the foreseeable future the number of available faculty positions will be closely related to the number of retirements, thereby making it difficult to employ younger professors, particularly women and minorities. Moreover, the financial burden on already hard-pressed institutions of higher learning may be increased by this legislation, because it may require the retention of highly paid senior employees for additional years. Concerns were expressed by the committee that although it is theoretically possible to discharge tenured faculty for cause, the difficulty of objectively evaluating the performance of such employees makes good cause discharges difficult. The committee therefore adopted an amendment offered by Senator Chafee to permit colleges and universities to maintain compulsory retirement policies for faculty at age 65 or above who are serving under a contract of unlimited tenure or similar arrangement providing for unlimited tenure.
 
 
 23
 The contract for the academic year 1990-91 tendered Professor Crozier by the University, and signed by him, provided as follows:
 
 
 24
 The Board of Regents of Oklahoma Colleges has approved your appointment as a Tenured member of the staff with the rank of Chairperson Assistant Professor at Central State University for the Academic Year 1990-91, subject to all the rules and regulations of the Board of Regents of Oklahoma Colleges, the laws and constitutions of Oklahoma and the United States, and the policies adopted by the University. (emphasis added)
 
 
 25
 In granting the Defendants' motion for summary judgment, the district court held that for the academic year 1990-91 Professor Crozier was, in fact, serving under a contract of unlimited tenure even though the signed contract for that year simply stated that Professor Crozier was "tenured." Therefore, the district court concluded, he came within the exception provided for in 29 U.S.C. Sec. 631(d) to the end that he could be involuntarily retired at the end of the 1990-91 academic year without offending the ADEA. We agree.
 
 
 26
 As noted, the teaching contract Professor Crozier signed for the academic year 1990-91 stated that he was a "[t]enured member of the staff...." Counsel points out that the teaching contract does not state that Professor Crozier's "tenure" is "unlimited tenure" and argues that accordingly, Professor Crozier does not fit 29 U.S.C. Sec. 631(d) and therefore is protected by the ADEA against "discharge because of age." We disagree with this reasoning.
 
 
 27
 During the 1990-91 term Professor Crozier was, by the terms of his contract, a "tenured" professor, which meant that during that year he could only be terminated for cause, for budgetary reasons, or, at the end of the school year, for compulsory age retirement. A termination for any of these reasons does not mean that Professor Crozier was not serving under a contract of unlimited tenure. Under 29 C.F.R. Sec. 1625.11(e)(1), a "tenured" professor has the right to "continued [employment] until retirement for age or physical disability," as distinguished from a professor under a teaching contract for a specific term, for example, one year or 10 years. That same regulation states that "the word 'unlimited' refers to the duration of tenure." However, the term "unlimited tenure" does not mean that "tenure" continues ad infinitum and, as indicated, even one having "unlimited tenure" may still be subject to compulsory retirement rules. In the academic year 1990-91, Professor Crozier was not teaching under a simple one-year contract. His contract specifically stated that he was tenured. In short, Professor Crozier was not teaching under a one-year contract, he was still an unlimited tenured professor, which, as indicated, does not mean that he is entitled to teach so long as he lives. On the contrary, he is still subject to reasonable retirement policies. He comes within 29 U.S.C. Sec. 631(d).[5]
 
 
 28
 Professor Crozier also claims that the Board's policy of compulsory requirement at age 70 violates the Equal Protection Clause of the Fourteenth Amendment. The district court rejected this argument, as do we.
 
 
 29
 In support of his equal protection argument, counsel suggests that because Professor Crozier himself was granted a one-year extension, such shows that the policy of compulsory retirement at age 70 was not uniformly applied. Needless to say, we are not impressed with such a bootstrapping effort. Counsel also suggests that other state universities and colleges in Oklahoma governed by the Boards other than the present Defendants do not have the same retirement policy as the University of Central Oklahoma. In this regard, counsel states in his brief at page 17 that the University of Oklahoma "apparently reviews a professor's situation on a case by case basis after they reach the age of seventy," which, we note, is about what was done in Professor Crozier's case. Finally, the suggestion that since the Defendants are merely an unelected board, and not a legislative body, they had no authority to promulgate a compulsory retirement age of seventy years is without merit. The Board was created by the Oklahoma Constitution. Okla. Const. Art. XIII-B. The Oklahoma legislature gave the Board the power to "establish and maintain plans for tenure and retirement...." Okla.Stat. tit. 70, Sec. 3510 (1991).
 
 
 30
 We agree with the district court that there was a "rational basis" for the retirement policy adopted by the Board and enforced by the University.[6] Historically, an equal protection analysis by federal courts of state statutes has resulted in the grant of considerable latitude to the states to deal with the "practical problems" of local government, and there is no "constitutional infirmity merely because the classification is not made with mathematical nicety." Danbridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). In holding that the Board's compulsory retirement policy does not violate rights guaranteed Professor Crozier under the Equal Protection Clause of the Fourteenth Amendment, we are in accord with numerous other courts that have considered this question and related matters. See Gregory v. Ashcroft, 501 U.S. ----, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991) (mandatory retirement for state court judges does not violate equal protection); Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979) (Foreign Service retirement system does not violate equal protection); McCann v. City of Chicago, 968 F.2d 635, 637-38 (7th Cir.1992) (different retirement policy for officers and sergeants did not violate the Equal Protection Clause of the Fourteenth Amendment); Thomas v. U.S. Postal Inspection Service, 647 F.2d 1035, 1036-37 (10th Cir.1981) (maximum entry age for postal service inspectors of 34 years does not violate due process or equal protection); Lamb v. Scripps College, 627 F.2d 1015, 1021-22 (9th Cir.1980) (mandatory faculty retirement in California colleges does not violate equal protection); Freund v. Floria, 795 F.Supp. 702, 705-08 (D.N.J.1992) (section 631(d) and related New Jersey statute do not violate equal protection); McAloon v. Bryant College of Business Admin., 520 F.Supp. 103, 106 (D.N.H.1981) (college's mandatory retirement age does not violate the ADEA or equal protection); Mittelstaedt v. Bd. of Trustees of Univ. of Arkansas, 487 F.Supp. 960, 966-67 (E.D.Ark.1980) (university retirement policy does not violate equal protection).
 
 
 31
 Judgment affirmed.
 
 
 
 [1]
 The Board has supervision, management and control of six universities and colleges in the State of Oklahoma, including the University of Central Oklahoma. Okla. Const. Art. 13, Secs. 1-4 (1981), Okla.Stat. tit. 70, Sec. 3510 (1993)
 
 
 [2]
 Sec. 631(d) Tenured employee at institution of higher education
 Nothing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 70 years of age, and who is serving under a contract of unlimited tenure (or similar arrangement providing for unlimited tenure) at an institution of higher education (as defined by section 1141(a) of Title 20).
 
 
 [3]
 ADEA is "remedial and humanitarian legislation" and should be interpreted liberally so as to effectuate congressional intent. A person claiming discharge because of age must show that age was "a reason" or "a determining factor" in the discharge. Dartt v. Shell Oil Co., 539 F.2d 1256, 1260 (10th Cir.1976), aff'd 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977); MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir.1991)
 
 
 [4]
 The EEOC is the federal agency responsible for enforcement of the ADEA and is authorized to adopt rules to enforce its provisions. 29 U.S.C.A. Sec. 633a(b). Therefore, the EEOC's interpretation of the ADEA is entitled to the same deference as its interpretation of provisions in Title VII. EEOC v. Commercial Office Products Co., 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1971). See, Peterson v. Wichita, 888 F.2d 1307, 1309 (10th Cir.1989) (deferring to EEOC's interpretation of Title VII)
 
 
 [5]
 We deem the present case to be different than Levine v. Fairleigh Dickinson Univ., 646 F.2d 825 (3rd Cir.1981). In that case, Dr. Levine's tenure was "revoked" when he attained the age of sixty-five, and he was thereafter appointed to a non-tenured one-year full time teaching position. Because Dr. Levine was "non-tenured" for the additional year, the Third Circuit held that Dr. Levine did not come within 29 U.S.C. Sec. 631(d) and that the ADEA did apply. In our case, Professor Crozier by the terms of his contract was "tenured" for the academic year 1990-91
 
 
 [6]
 "Strict scrutiny" is not the test to be applied in the present case. The proper test is whether the statute or regulation has a "rational basis for the purpose sought to be accomplished." Thomas v. United States Postal Inspection Service, 647 F.2d 1035 (10th Cir.1981)