

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-1997

# Courtney v. LaSalle Univ

Precedential or Non-Precedential:

Docket
96-1512,96-1865

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"Courtney v. LaSalle Univ" (1997). *1997 Decisions.* Paper 207.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 26, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-1512, 96-1572, 96-1865
96-1866, 96-1867 and 96-1868

DONALD J. COURTNEY, EXECUTOR AND PERSONAL
REPRESENTATIVE OF ROBERT J. COURTNEY, Ph.D.,
DECEASED ON OCTOBER 6, 1996,
      Appellant in Nos. 96-1512 and 96-1867

v.

LA SALLE UNIVERSITY
      Appellant in No. 96-1865

(D.C. No. 92-cv-03838)

CHARLES A. HALPIN, JR., J.D.,
      Appellant in Nos. 96-1572 and 96-1868

v.

LA SALLE UNIVERSITY
      Appellant in No. 96-1866

(D.C. No. 92-cv-04079)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

Argued: June 2, 1997
Before: BECKER and SCIRICA, Circuit Judges,
and SCHWARZER,* Senior District Judge

(Filed August 26, 1997)

        DAWN RILEY COURTNEY,
         ESQUIRE (ARGUED)
        KEVIN J. O'BRIEN, ESQUIRE
        Marks, O'Neill, Reilly,
         O'Brien & Courtney, P.C.
        1880 John F. Kennedy Boulevard
        Suite 1200
        Philadelphia, PA 19103

Attorney for Donald J. Courtney

          CHARLES A. HALPIN, III,
           ESQUIRE (ARGUED)
          KEVIN J. O'BRIEN, ESQUIRE
          Marks, O'Neill, Reilly,
           O'Brien & Courtney, P.C.
          1880 John F. Kennedy Boulevard
          Suite 1200
          Philadelphia, PA 19103

Attorney for Charles A.
Halpin, Jr., J.D.

_____

*Honorable William W Schwarzer, Senior United States District Judge for
the Northern District of California, sitting by designation.

                               2

          JOHN C. WRIGHT, JR.,
           ESQUIRE (ARGUED)
          DAVID E. BRIER, ESQUIRE
          Montgomery, McCracken, Walker
           & Rhoads
          123 South Broad Street
          Philadelphia, PA 19109

          Attorneys for La Salle University

OPINION OF THE COURT

SCHWARZER, Senior District Judge:

In June 1990, La Salle University retired Professor Robert
J. Courtney, over his objection, because he had reached the
age of seventy. A year later, Professor Charles A. Halpin
was retired for the same reason. Both professors had long
been aware that La Salle's policy mandated their retirement
at age seventy, but neither filed a charge with the Equal
Employment Opportunity Commission ("EEOC") until
November 1991. The question on this appeal is whether
their charges under the Age Discrimination in Employment
Act, 29 U.S.C. SS 621-634, ("ADEA") were timely filed.

FACTUAL BACKGROUND

La Salle has long maintained a mandatory retirement
policy. In 1963, the Faculty Handbook stated that
employment at the University would continue beyond age
sixty-five only upon approval by the Board of Managers.
Four years later, the College Council voted to adopt a
mandatory retirement age of sixty-five. In 1982, the
mandatory retirement policy was amended to require

retirement at the end of the year in which the professor reached the age of seventy.

Professors Courtney and Halpin began teaching at La Salle in 1946, and received academic tenure ten years later. In the mid-1960s both received letters announcing their "appointment for life" to the rank of "professor."

3

In 1988, both Courtney and Halpin inquired about taking sabbaticals and were told that La Salle would not allow it because they were nearing mandatory retirement. The professors responded that the "appointment for life" represented a contract of lifetime employment, and that they did not have to retire. On May 20, 1988, La Salle sent identical letters to each professor, stating that "the University is not contractually obligated to employ you beyond the end of the fiscal year in which you reach the age of seventy." La Salle stated its position that the professors were employed under contracts of one year only:

> Your 1987-1988 contract, dated May 18 and executed May 27, 1987, as well as your 1988-1989 contract . . . clearly states: "This appointment, if accepted by you, constitutes the entire agreement between you and La Salle University concerning the term of your appointment, rank and salary. . . .

> Thus, your present faculty contract is a fully integrated agreement and its term is only for the 1988-1989 academic year. It does not contain any of the language used in the contracts of the early 60's.

Two years later, the professors filed suit in state court, seeking a declaratory judgment that they had contracts of lifetime employment. No charge of age discrimination was filed with the EEOC at that time. The trial court found that the professors did indeed have contracts of lifetime employment (based on the 1960's "appointment for life" language), but the Pennsylvania Superior Court reversed, holding that the professors had entered into integrated contracts for a term of one year only. Halpin v. La Salle Univ., 639 A.2d 37 (Pa. Super. Ct. 1994). The Pennsylvania Supreme Court denied discretionary review. 668 A.2d 1133 (Pa. 1994) (table).

Courtney turned seventy during the 1989-1990 school year. In February 1990, La Salle formally notified him that, consistent with University policy, he would be required to retire at the end of the school year. Courtney was offered a part-time teaching position with reduced salary and

benefits for the fall of 1990, which he accepted.

4

Halpin turned seventy in January 1991. On February 1, 1991, La Salle notified him that school policy required him to retire at the end of the 1990-1991 school year, and offered him a part-time teaching position for the following academic year, which he too accepted.

On November 29, 1991, Halpin and Courtney filed charges of discrimination under the ADEA with the EEOC. After the EEOC issued right-to-sue letters, they brought two separate actions in the United States District Court for the Eastern District of Pennsylvania. The complaints alleged violations of the ADEA, in Count I based on the mandatory retirement policy and the part-time employment policy, and in Count II based on an alleged pattern and practice of discrimination against employees over seventy.[1]

La Salle moved for summary judgment, contending that as a matter of law it falls within the ADEA exemption for tenured professors, 29 U.S.C. S 631(d) (1993) (repealed by P.L. 99-592, S 6(b)). The district court denied La Salle's motion for summary judgment on this point, concluding that La Salle was bound by the state appellate court's holding that the professors' contracts were for a term of one year only, and therefore did not meet the terms of the exemption, which requires a contract or similar arrangement for unlimited tenure.

La Salle also moved for summary judgment in both cases based on 29 U.S.C. S 626(d)(2), which requires that a charge of unlawful discrimination under the ADEA befiled "within 300 days after the alleged unlawful practice occurred . . . ." The district court granted summary judgment on Courtney's claims, finding that the November 1991 charge was brought more than 300 days after his claims accrued and that no equitable exception to the limitations period applied. As to Halpin's claims, the district court granted the motion on the mandatory retirement claim, finding it untimely, but denied it on Halpin's claim of discrimination based on the part-time employment policy. The district court certified the order in Halpin's case for interlocutory appeal.

_____

1. Plaintiffs did not appeal the dismissal of Count II.

5

We have jurisdiction of Courtney's appeal under 28
U.S.C. S 1291, and of Halpin's appeal under 28 U.S.C.
S 1292(b). Our review of the district court's decision is de
novo. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236
(3d Cir. 1995).2

DISCUSSION

I. APPLICATION OF THE ADEA TENURE EXEMPTION

The ADEA generally prohibits employers from
"discharg[ing] any individual or otherwise discriminat[ing]
against any individual with respect to his compensation,
terms, conditions, or privileges of employment, because of
such individual's age." 29 U.S.C. S 623(a)(1). There is no
question that both Halpin and Courtney were discharged or
otherwise discriminated against because of their age: both
were required to retire solely because they were seventy
years old. La Salle contends, however, that the mandatory
retirements were legal because of a then-existing exemption
under the ADEA which provided:

> Nothing in this chapter shall be construed to prohibit
> compulsory retirement of any employee who has
> attained 70 years of age, and who is serving under a
> contract of unlimited tenure (or similar arrangement
> providing for unlimited tenure) at an institution of
> higher learning.

29 U.S.C. S 631(d) (1993) (repealed by P.L. 99-592, S 6(b)).
Because the ADEA does not define "contract of unlimited
tenure," we look to interpretation of the exemption in the
EEOC's regulations, 29 C.F.R. S 1625.11. Levine v. Fairleigh
Dickinson Univ., 646 F.2d 825, 831 (3d Cir. 1981) (deferring
to EEOC interpretation of tenured faculty exemption);
Crozier v. Howard, 11 F.3d 967, 971 & n.4 (10th Cir. 1993)
(same).

_____

2. Because we remand his mandatory retirement claim, we leave the
disposition of his part-time employment claim to the district court
without expressing a view on the merits of the court's earlier ruling on
that issue. As for Courtney's claim, it is in any event barred by the
statute of limitations.

"Unlimited tenure," according to the EEOC, means

> an arrangement under which certain appointments in
> an institution of higher education are continued until

retirement for age o[r] physical disability, subject to dismissal for adequate cause or under extraordinary circumstances on account of financial exigency or change of institutional program. Adopting that definition, it is evident that the word "unlimited" refers to the duration of tenure. Therefore, a contract (or other similar arrangement) which is limited to a specific term (for example, one year or 10 years) will not meet the requirements of the exemption.

29 C.F.R. S 1625.11(e)(1) (emphasis added). The requirement that the contract (or similar arrangement) be for "unlimited" tenure is essential to the exemption, even if traditional protections of tenure3 are extended during the limited term of appointment:

Employees who are not assured of a continuing appointment either by contract of unlimited tenure or other similar arrangement (such as a state statute) would not, of course, be exempted from the prohibitions against compulsory retirement, even if they perform functions identical to those performed by employees with appropriate tenure.

Id. S 1625.11(f) (emphasis added). The EEOC also instructs that the elements of unlimited tenure must be "clearly and unmistakably met," and that "this exemption must be narrowly construed." Id. S 1625.11(b).

The district court found that Professor Halpin was afforded the protections of tenure under the 1940 AAUP Statement. It further held, however, that La Salle could not

_____

3. The regulation separately defines what "tenure" means by reference to the 1940 American Association of University Professors ("AAUP") "Statement of Principles" on academic tenure. The 1940 AAUP Statement requires that any appointment be in writing, mandates academic freedom, defines a procedure governing termination for cause, and requires that any financial exigency (justifying termination) be bona fide.
Id. S 1625.11(e)(2). The absence of any of these factors does not preclude a finding of "tenure" under the ADEA exemption. Id. S 1625.11(e)(3).

7

establish compliance with the exemption because the decision of the state appellate court established that the term of Halpin's contracts was for one year only. We agree. Because Halpin was "not assured of a continuing appointment either by contract of unlimited tenure or other similar arrangement (such as a state statute)," 29 C.F.R.

S 1625.11(f), the exemption does not apply.

We must give the state court's judgment the same effect it would have in the Pennsylvania state courts. Mosley v. Wilson, 102 F.3d 85, 92 (3d Cir. 1996). "Collateral estoppel, sometimes referred to as issue preclusion, operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." Ammon v. McCloskey, 655 A.2d 549, 553 (Pa. Super. Ct. 1995).

> Under Pennsylvania law, . . . a prior determination of a legal issue is conclusive in a subsequent action between the parties on the same or a different claim when (1) the issue was actually litigated; (2) the issue was determined by a valid and final judgment; and (3) the determination was essential to the judgment.

O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1065-66 (3d Cir. 1991).

The duration of Halpin's contract was the sole issue before the state court: "Here, none of the parties contend that employment was at will. There is dispute, however, regarding the length of the term for which employment was contracted." Halpin v. La Salle Univ., 639 A.2d 37, 39 (Pa. Super. Ct. 1994). The state court accepted La Salle's argument that "employment as a member of the faculty was year by year," id. at 38, and held that while Halpin was guaranteed the "rank" of professor for the rest of his life, "the duration of employment in each contract was for a period of one academic year." Id. at 40.

La Salle contends that it does not seek to re-litigate issues decided in the state court because it seeks only to establish the meaning of the term "academic tenure," which it says was not an issue in the state court litigation. To this end, La Salle argues that Halpin was guaranteed continued

employment based on the University's Faculty Handbook. The Handbook states:

> La Salle University subscribes to the principle of academic tenure, that is, title to continued employment. . . . The full-time teacher under contract with tenure may competently expect to hold his/her position until he/she is retired for age or permanent disability or separated for adequate cause under due process or because of financial exigencies of the

institution.

But we need not decide whether the Handbook gave Halpin a contract of unlimited duration (subject, of course, to mandatory retirement or dismissal for cause or forfinancial exigency): the state court has decided the issue. The Pennsylvania Superior Court held that because the contracts were "clear and unequivocal" on the subject of duration, no extrinsic evidence would be permitted to vary their meaning. Halpin, 639 A.2d at 39-40. And since 29 U.S.C. S 631(d) requires a contract or similar legal obligation (e.g., a statute, 29 C.F.R. S 1625.11(f)) to guarantee continued employment, it is no defense that Halpin, as La Salle now asserts, had some sort of amorphous "expectation" that his contract would be renewed.

La Salle appears to argue that the state court could have decided the case in its favor without reaching the issue of the duration of the contracts, by holding only that Halpin had no right to continued employment past age seventy. While the state court could have construed the evidence of the parties' intent, including the Faculty Handbook, as guaranteeing continued employment up to age seventy, it did not decide the case on that basis. We have previously rejected the "notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided." O'Leary, 923 F.2d at 1067 (3d Cir. 1991) (applying Pennsylvania law). The state court held that the only contract between Halpin and La Salle specified a period of employment of one academic year, and held that extrinsic evidence was inadmissible to prove that La Salle was obligated to more. Halpin, 639 A.2d at 39-40. These

9

determinations were not dicta, but were essential to the holding of the case and are binding here.

Because at the time of Halpin's retirement, La Salle's contract with him was limited to a term of one year, the ADEA exemption did not apply. Accordingly, the district court was correct in rejecting La Salle's claim to the ADEA exemption for contracts of unlimited tenure.

II. APPLICATION OF THE STATUTE OF LIMITATIONS

A. Professor Halpin

The limitations period under the ADEA generally begins "when the employer has established its official position and made that position apparent to the employee by explicit

notice." Colgan v. Fisher Scientific Co. , 935 F.2d 1407, 1416-17 (3d Cir. 1991); see also Chardon v. Fernandez, 454 U.S. 6 (1981) (per curiam); Delaware State College v. Ricks, 449 U.S. 250 (1980). Halpin was aware long before February 2, 1991 (which was 300 days before his charge was filed) that he would be required to retire at the end of the 1990-1991 school year. The mandatory retirement policy had been in place for over twenty years; the specific policy he challenges was adopted in 1982. The 1988 correspondence between Halpin and La Salle told him that he would have to retire in 1991; his 1990 state court complaint showed that he understood exactly what La Salle meant. Halpin's claim is therefore barred unless (1) it was tolled by equitable estoppel or, (2) under the continuing violation theory, the last date of accrual was when the mandatory retirement policy was applied to him.

    1. Equitable estoppel

Halpin's first contention is that La Salle "affirmatively misled" him into believing that its retirement policy was lawful. In Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994), we held that "where a defendant actively misleads the plaintiff regarding the reason for the plaintiff 's dismissal" the limitations period will be tolled "until the facts which would support the plaintiff 's cause of action are apparent, or should be apparent" to a reasonably prudent person.

10

Halpin argues that he was led to believe that LaSalle's retirement policy was exempt under the ADEA: that he was at an institution of higher learning and serving under a contract (or similar arrangement) of unlimited tenure, see supra pp. 6-8. For this reason, he claims, he did not know that he had an ADEA claim. Halpin asserts that it was not until October 1991 that he learned, from the position taken by LaSalle in the state court litigation, that he had a contract for a one-year term only. This revelation, he says, prompted the filing of his charge with the EEOC in November.

Halpin has the burden of establishing the equitable tolling exception. Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 661 (11th Cir. 1991) (plaintiffs have burden of establishing equitable tolling in Title VII case). But Halpin presented no evidence showing that he in fact believed that La Salle's mandatory retirement policy was lawful and delayed filing his charge for that reason. To the contrary, in his deposition Halpin testified that filing was delayed because he hoped the state court contract action would

prompt a settlement. Moreover, the employment contracts, which Halpin now asserts show that he did not  have a contract of unlimited tenure (taking him out of the ADEA exemption), were signed by him annually for many years. La Salle's 1988 letter to Halpin clearly disclosed its position that his contract was for a one-year term only. On these facts, no reasonable fact-finder could find the facts to support equitable tolling.

2. Continuing violation

The district court held that Halpin's claim based on LaSalle's mandatory retirement policy accrued and the 300 day filing period began to run when La Salle informed him that he would be involuntarily retired under the policy. Halpin had notice of the mandatory retirement policy, and its prospective application to him, by the time hefiled the state court action in May 1990, well outside the 300 day period. Halpin contends, however, that under the continuing violation theory his charge was timelyfiled. The district court rejected this argument, holding that the theory did not apply in the absence of a "pattern or practice

11

of discrimination." The court reasoned that there was no continuing violation because "the application of the mandatory retirement policy . . . happened once."

The district court based its ruling on Delaware State College v. Ricks, 449 U.S. 250 (1980), holding that "a plaintiff may not rely on the continuing violation theory to advance claims about isolated instances of discrimination concluded in the past, even though the effects  persist into the present." E.E.O.C. v. Westinghouse Elec. Corp., 725 F.2d 211, 218 (3d Cir. 1983) (describing holding in Ricks) (emphasis in original). In Westinghouse, we recognized that where the challenge is to a continuing discriminatory policy --in this case, the age-based mandatory retirement policy-- each application of that policy to an employee constitutes a discrete act of discrimination. Id. at 219-20; see also Webb v. Indiana Nat'l Bank, 931 F.2d 434, 438 (7th Cir. 1991) ("Ordinarily, in the case of a continuing unlawful practice, every day that the practice continues is a fresh wrong for purposes of the statute of limitations. . . . Ricks [did not] abolish this principle. . . . We adopt the distinction made in . . . EEOC v. Westinghouse Electric Corp. , between the present consequence of a one-time violation and the continuation of the violation into the present.") (citations omitted); O'Malley v. GTE Serv. Corp., 758 F.2d 818, 821 (2d Cir. 1985); West v. Philadelphia Elec. Co. , 45 F.3d 744, 754 (3d Cir. 1995) (applying the continuing violation theory

to a claim of disciminatory pattern and practice).

Application of the continuing violation theory requires proof of the existence of a discriminatory policy and of its application to plaintiff; both elements are present here. The time for filing a charge runs from the most recent application of the policy to plaintiff, regardless of when he received notice of the policy and its prospective effect on him. Westinghouse Elec. Corp., 725 F.2d at 219. Situations like Ricks and Chardon are distinguishable; there the "alleged unlawful practice occur[s]" when the discriminatory decision, e.g., to deny tenure, or to terminate the employee, is made based on an impermissible factor.

In Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989), the Supreme Court limited the application of the continuing violation theory to policies that are "facially

discriminatory." Id. at 912 n.5. The court reasoned that where a policy is "facially nondiscriminatory and neutrally applied," its invalidity is "wholly dependent on the alleged illegality of [its adoption]." Id. at 911. In contrast, when the employer has an express policy of terminating employees based on their age, the policy "by definition discriminates each time it is applied." Id. at 912 n.5. The timeliness of a challenge to a mandatory retirement provision is therefore determined "with reference to the earlier of either the last day of employment, or, if applicable, the date on which the employer eliminates the unlawful provision." See O'Malley, 758 F.2d at 821 (quoting EEOC v. Home Ins. Co. , 553 F.Supp. 704, 713 (S.D.N.Y. 1982)); accord EEOC v. Kentucky State Police Dep't, 80 F.3d 1086, 1094 (6th Cir.) (mandatory retirement statute "facially discriminates between troopers younger than fifty-five years of age and those older than fifty-five years of age"; thus, "a claim becomes ripe when the statute is applied, [i.e.,] when the trooper is mandatorily retired."), cert. denied, 117 S. Ct. 385 (1996); but cf. Heiar v. Crawford County, 746 F.2d 1190, 1194 (7th Cir. 1984) (suggesting that notice, rather than retirement, begins the 300 day limitations period to challenge mandatory retirement policy).

La Salle concedes that its mandatory retirement policy discriminates among its professors on the basis of age and that it applied this policy to Halpin within the 300 day charge-filing period. But it contends that its policy was not subject to the continuing violation theory because it was "facially legal," i.e., that on its face it complied with the statutory exemption for tenured professors.4

Lorance draws a distinction between facially neutral and facially discriminatory policies. It provides no support for the argument that a policy that discriminates on the basis of otherwise prohibited characteristics should be treated as though it were facially neutral because it appears on its face (though not in fact, see supra, p. 12-13) to fall within

_____

4. The La Salle policy states: "Beginning June 30, 1982, retirement from full-time teaching shall be mandatory for ranked, tenured faculty as of the last day of the fiscal year in which the faculty member reaches the age of seventy."

a statutory exemption. Indeed the court's articulation of the distinction is inconsistent with such a theory:

> With a facially neutral system the discriminatory act occurs only at the time of adoption, for each application is nondiscriminatory (seniority accrues for men and women on an identical basis). But a facially discriminatory system (e.g., one that assigns men twice the seniority that women receive for the same amount of time served) by definition discriminates each time it is applied.

Lorance, 490 U.S. at 912 n.5. Here too we have a facially discriminatory policy, i.e., one that on its face sorts employees according to age. That La Salle may have a defense does not make it less discriminatory. La Salle's argument ignores the distinction underlying Lorance, between policies that can be attacked only on the basis of the discriminatory intent that motivated their adoption and those whose legality turns not on the sponsor's intent but on the prohibited effect of their application. There is no issue in this case over whether La Salle adopted its policy with a discriminatory intent; the question is solely whether it violates the ADEA when it is applied.[5]

Halpin's EEOC charge was timely because he filed within 300 days of the date that the "alleged unlawful practice occurred," i.e., the date on which La Salle mandatorily retired him from full-time employment.

B. Professor Courtney

Professor Courtney's circumstances are significantly different from Halpin's. Like Halpin, Courtney knew of his impending retirement far in advance of the actual date. But when the policy was finally applied to him in 1991, triggering the charge-filing period even under the

continuing violation theory, he did not assert a claim under the ADEA. Instead, he waited almost a year and a half

_____

5. La Salle relies on O'Malley which, without analysis, rejected a continuing violation theory where a policy was "facially proper." 758 F.2d at 821. Because O'Malley was decided before Lorance and did not consider the issues discussed in our opinion, we do not find it persuasive.

14

before filing the EEOC charge, well beyond the 300 days permitted by 29 U.S.C. S 626(d)(2).

Courtney argues, as does Halpin, that he was actively misled by La Salle's statement that he had "tenure." But as with Halpin, no reasonable jury could find that Courtney acted in reliance on La Salle's position,6 or that such reliance was reasonable in light of the 1988 letter, which explained La Salle's position with respect to the one year contract.

The district court properly granted summary judgment on Courtney's claims arising from his subsequent part-time employment as well. The only distinction between Courtney and those he says are "similarly situated" is that he was mandatorily retired at age 70 and they were not. Having failed to challenge his mandatory retirement within 300 days, he is barred from complaining of the continuing consequences the retirement has on his employment status. See Ricks, 449 U.S. at 258, 101 S.Ct. at 504.

CONCLUSION

We AFFIRM the order granting summary judgment against Courtney. We VACATE the order granting partial summary against Halpin based on untimely filing of his EEOC charge, and REMAND for further proceedings consistent with this opinion.

_____

6. Courtney explained in his deposition why he delayed filing his charge:

> Q: [W]hat prompted you to file this charge alleging age discrimination in November of 1991?
>
> A: My paycheck . . .When I started receiving the part-time pay [in September 1990].
>
> Q: [W]hy did you wait until November of`91 to file this charge when the change in your pay occurred in September of`90?

A: We thought that we could reach a resolution with La Salle on the basis of our contention versus their contention. When that didn't happen, I filed with the EEOC.

Courtney Dep., 38-39.

15

BECKER, concurring.

The threshold question on this appeal is whether to give collateral estoppel effect to the state court determination that Courtney and Halpin had contract rights of a duration limited to one year, and thus did not have the "unlimited tenure" necessary to trigger the tenured faculty exemption, 29 U.S.C. S 631(d). I believe that the state court's decision was wrong, but I also believe that Judge Schwarzer is correct that we must give it collateral estoppel effect.

The state court appears to have accepted the plaintiffs' tenure status. In fact, before engaging in its contractual analysis, the state court even stated, albeit offhandedly, that the plaintiffs held tenured positions. But the court pursued a different interpretation of the significance of tenure, concluding that tenure meant nothing more than that plaintiffs were guaranteed the rank of professor for their academic life.

It is not surprising that the state court did not engage in the same analysis that we would have in an ADEA claim. Courtney and Halpin did not raise ADEA claims in state court, and La Salle did not argue the exemption since there was no ADEA claim to defend at the time. Moreover, the issue before us involves the application of a federal statute with its own set of governing regulations.

My concern about the result I must reach is compounded by the fact that I am convinced that La Salle in fact qualified for the ADEA exemption on the basis of the 1956 Faculty Handbook and the letters written by the University to each plaintiff which, I believe, granted plaintiffs tenure rights. And yet, with respect to those matters, the state court said:

> The contracts in the instant case, when construed as a whole, are clear and unambiguous. It was unnecessary to refer to the language appearing in the 1956 Faculty Bulletin or letters by the university to members of the faculty to ascertain the parties' intent. The fact that parties to a contract disagree upon its proper interpretation does not necessarily render the

writing ambiguous.

In view of this passage, I cannot gainsay the accuracy of Judge Schwarzer's observation that the state court has already decided what the Handbook (and inferentially the letters) in fact gave the professors. And I know of no principle permitting us to avoid giving collateral estoppel effect to erroneous decisions. My discomfiture about the result is, however, allayed by the fact that it was La Salle that contended in state court that Courtney and Halpin's invitations of tenure meant nothing more than that they were guaranteed the "rank of professor" for the duration of their active academic life. In other words, La Salle may be hoist on its own petard.

For the foregoing reasons, I am constrained to agree with Judge Schwarzer that La Salle's policy is not covered by the ADEA exemption for tenured faculty members. I therefore concur in his opinion and in the judgment of the court.

SCIRICA, Circuit Judge, concurring.

I doubt that any party to this lawsuit ever believed that Courtney and Halpin did not have tenured positions at LaSalle. Indeed the Pennsylvania Superior Court stated, "Halpin and Courtney were granted tenure according to the conditions set forth in the Faculty Bulletin."1 Halpin v. LaSalle Univ., 639 A.2d 37, 38 (Pa. Super. Ct. 1994). Whatever else tenure may mean, its essence is protection from termination.

Yet the Pennsylvania Superior Court chose to define tenure here as entitlement to rank only and duration of employment from year to year only. Like Judge Becker I believe their decision was wrong but like Judge Schwarzer I believe we are bound to give it collateral effect.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

1. The Faculty Handbook provides:

[t]he full-time teacher under contract with tenure may competently expect to hold his/her position until he/she is retired for age or disability or separated for adequate cause under due process or because of financial exigencies of the institution. (AAUP Bul. SM 1964, p. 114).

18